## WILLIAM H. SEYMOUR AND WIFE *vs.* THE CONTINENTAL LIFE INSURANCE COMPANY.

A promissory note was made in 1872, with interest payable semi-annually at the rate of eight per cent. per annum, which was then legal. The note was given for a loan made by a corporation, and was intended to run for several years. In 1875 an act was passed limiting the rate of interest for money loaned to seven per cent. Held that eight per cent. continued to be the legal rate of interest upon the note, after that act was passed, and until the note was paid.

The note was given by a husband and wife and secured by a mortgage of her land. The husband at the same time signed a paper agreeing to an increase of interest so long as any interest remained unpaid and to a foreclosure if it remained unpaid sixty days after due. Held that this paper was admissible for the purpose of showing that a permanent loan was intended.

The statute, (Gen. Statutes, p. 343, sec. 2,) which provides that any promissory note payable on demand, which remains unpaid four months from its date, shall be considered overdue and dishonored, does not affect the rights of the original parties to the note, but only those of third parties, as endorsers, guarantors or purchasers.

DEBT, for the recovery of usurious interest claimed to have been received of the plaintiffs by the defendants; brought to the Superior Court in Hartford County, and tried to the court on the general issue before *Granger, J.* The court found the following facts:—

The following note was executed, at the time it bears date, by the plaintiffs, who were then, and are still, husband and wife.

"$12,000.                    "HARTFORD, Sept. 21st, 1872.

"On demand we promise to pay to the order of the Continental Life Insurance Company, twelve thousand dollars, with interest at the rate of eight per cent. per annum, payable semi-annually at the office of said company, value received.

WILLIAM H. SEYMOUR,
ELIZABETH P. SEYMOUR."

This note was at the time it was given secured by a mortgage executed by the makers, of a farm in West Hartford, belonging to the wife. At the same time, and as a part of the same transaction, the following paper was signed by the husband alone, and delivered, with the mortgage, to the defendants.

"HARTFORD, Sept. 21st, 1872.

"Having made a loan this day of The Continental Life Ins. Co., of twelve thousand dollars, and interest at eight per cent. payable semi-annually, this is to certify that I agree to pay said interest promptly when due; if not paid within ten days of time due I will pay two per cent. extra on whole amount of loan until said interest is paid, and will submit to a foreclosure if in any event the interest should not be paid within sixty days of the time it is due.

WILLIAM H. SEYMOUR."

It was admitted that the note, with the interest thereon at the rate of eight per cent. per annum, according to the tenor of the note, was fully paid by the plaintiffs and the mortgage security released; and that the principal of the note and a large part of the interest was paid from the avails realized from a re-mortgage of the same premises to a third party; and that during the last year before the suit was brought, interest at the rate of eight per cent. was paid to and received by the defendants, and that demand for the amount of the interest so paid and received was made on the defendants before the suit was brought.

To the admission of the stipulation signed by William H. Seymour, and which was offered in evidence by the defendants, the plaintiffs objected, on the ground that if admissible against him, it was not admissible against his wife, and in no way could bind her, or affect her interest; and that it was not admissible against either to show when the note matured, as that was settled by positive law, its reference to the note being only by way of description, and no more evidence of the intent of the parties than the note itself. The court held that the stipulation was admissible against the husband only.

Upon these facts the plaintiffs claimed that as the note was a negotiable promissory note, payable on demand, under the laws of the state, it became by statute overdue and dishonored four months after its date, and that after that time the defendants could only legally recover for forbearance on the principal sum, "interest by way of damages, at the legal rate of seven per cent. per annum;" and that the defendants,

having received for forbearance more than at that rate, forfeited the whole amount so received for forbearance, to any person suing therefor within one year thereafter; and that therefore the plaintiffs were entitled to recover the amount claimed in their bill of particulars. But the court did not so decide, but overruled the claims of the plaintiffs and rendered judgment for the defendants to recover their costs.

The plaintiffs brought the record before this court by a motion in error.

The statutes affecting the case are given in the briefs of the counsel.

*R. S. Welles*, for the plaintiffs.

*First.* The note in this case was made September 21st, 1872, and is to be construed according to the law existing at that time. *Van Hoffman* v. *City of Quincy*, 4 Wall., 535, 550, 553; *Walker* v. *Whitehead*, 16 id., 314, 317. There was a statute then existing, applicable to this note, providing when it should mature, and the rate of interest it should draw after its maturity.

1. When did it mature? Being a negotiable promissory note on demand, by the statute of 1865 it became "overdue and dishonored" four months after its date. Gen. Stat. of 1866, p. 600, sec. 2; Gen. Stat. of 1875, p. 343, sec. 2. The words *"overdue and dishonored"* have a technical meaning well settled. A note is *due* "when the time for payment of it has arrived;" *overdue* when that time has passed, and *dishonored* if then unpaid. It has been held that under this statute such a note, though expressed to be with interest, and intended to lie as a continuing security, becomes due four months from its date, without allowing days of grace. *Rhodes* v. *Seymour*, 36 Conn., 1, 6. This note matured, therefore, January 21st, 1873. The payee had a right to terminate its life before that time by making demand, and the maker by tendering payment. The statute did not affect the rights of the parties till the limitation had expired. The words "on demand" are equivalent to the words of the statute "four months from date," with the option to either party to termi-

nate the contract before that time. That such was the understanding of the defendants is evident from the stipulation, in which it is provided that if the interest be not paid "promptly when due," "two per cent. extra should be paid on the whole amount of the loan," which shows that the whole interest after the first half yearly payment was considered as flexible in amount, subject to be raised by way of penalty, and not fixed by the contract in the note; also by the stipulation to "submit to a foreclosure" on non-payment of interest for sixty days, proving that they considered that the principal would be past due or overdue *without demand*, when the first half yearly payment should become due.

2. What rate of interest was collectible by the defendants after the maturity of the note? By the act of 1872 it was provided "that no greater rate of interest than six per centum per annum shall be recovered in any action except when the agreement to pay such greater rate of interest is in writing." The agreement in the note to pay eight per cent. should not be construed to extend beyond its maturity, especially in face of the stipulation, where the interest after maturity is treated as a penalty, not covered by the contract and liable to be raised on a contingency. *Fisher* v. *Bidwell*, 27 Conn., 363; *Brewster* v. *Wakefield*, 22 How., 118; *Ludwick* v. *Huntzinger*, 5 Watts & Serg., 51. The only other construction is that the parties intended that the note should draw eight per cent. interest till fully paid, without reference to its maturity, or to a demand, or to legal enactments that might be passed making that rate illegal. But this would conflict with the terms of the note, ("on demand,") and of the stipulation. The court will not presume such an intent, and much less sanction it. *Parmelee* v. *Lawrence*, 48 Ill., 331, 342. There is no clear, positive and unequivocal agreement to pay eight per cent. after the maturity of the note. The expression "with interest at the rate of eight per cent. per annum," should be construed to specify the rate at which the interest should be calculated up to maturity, while the expression "payable semi-annually" should be construed to refer not to the eight per cent., not to the *rate* or *amount* of interest, but simply to designate *how*

*often* after maturity the interest by way of damages or penalty should be paid.   There was a contingency as to what the amount would be, which proves that the agreement in the note did not control it.   In the case of *Hubbard* v. *Callahan*, 42 Conn., 538, there was a clear and absolute agreement for interest " after maturity."   Here there is no such agreement, and consequently under the statute of 1872 the note drew only six per cent. interest after maturity.   *Suffield Eccl. So.* v. *Loomis*, 42 Conn., 570.   On July 1st, 1873, the legislature passed an act providing that " no person or incorporated institution in this state, upon any contract for the loan of money, shall take, directly or indirectly, more than the value of seven dollars for the forbearance of one hundred dollars for one year."   This act applied to this note unless there was a contract for interest after maturity.   On July 11th, 1873, the legislature passed another act, providing that in all suits thereafter brought for the recovery of moneys loaned, " no greater rate of interest than seven per cent. per annum shall be recovered or allowed for the time after the money loaned becomes due."   As this money loaned had become due before July 11th, 1873, these statutes, after their passage, controlled the interest on this loan, unless the contract rate so clearly extended after maturity as to be entitled to invoke the protection of the constitution of the United States.   *Barlow* v. *Gregory*, 31 Conn., 261, 265.   "A contract should be clearly proved before it invokes the protection of the constitution." *Concord* v. *Portsmouth Savings Bank*, 2 Otto, 625, 630.   This prohibition continued till the revision of 1875, when interest at seven per cent., and no more, was allowed in all cases, " including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable."   Gen. Stat., p. 351, sec. 2; *Bullock* v. *Boyd*, Hoff. Cha., 294, 300; *Savings Bank* v. *Bates*, 8 Conn., 505.   The interest that we seek to recover in this action was all received after this revision took effect, and was within the prohibition of the statute.

*Second.*   The court finds that the note and stipulation were parts of the same transaction.   The stipulation is admissible

as against the defendants who offered it; but not as against Mrs. Seymour, who did not sign it.   A joint note of husband and wife cannot be altered adversely to the interests of the wife, by any subsequent act of the husband.   That this paper was subsequent appears by the words "having made a loan." The mortgage describes the note only.   Even if admissible against him, the wife furnishes the money and the security, and is the meritorious cause of action, and can recover independently of her husband.   Gen. Stat., p. 417, sec. 12; *Haman* v. *New Britain Nat. Bank,* 42 Conn., 141.

*H. B. Freeman,* for the defendants.

1.   Although by its terms the note was payable *on demand,* yet it was not intended to be a *four months' note,* or to be paid *at once,* as the payment of interest *semi-annually* clearly shows.   It was a contract technically known as a "permanent loan."   The court in the case of *Hubbard* v. *Callahan,* 42 Conn., 528, says of these contracts: "With the exception of loans made by regular banks of discount, it is quite common for the parties to specify an earlier day than is really intended for payment.   The immense sums of money loaned by the savings banks, insurance companies, and the school fund of the state, are all evidenced by notes, bonds, or other instruments on demand, or on very short time, and yet these are called permanent loans."   It is immaterial, therefore, when the note, by its terms, became legally due.   *Gray* v. *Briscoe,* 6 Bush, 690.   The parties are to be regarded as having contracted for the payment of interest *after the maturity of the note, until payment.*   The note and stipulation clearly show that the rate of interest was fixed with reference, not to the *time of maturity,* but *of payment.*   The interest was payable semi-annually.   And the stipulation expressly provides that "if interest is not paid within ten days of the time due," two per cent. extra is to be paid "on the whole amount of the loan until said interest is paid;" also that a foreclosure will be submitted to "if, in any event, the interest should not be paid within sixty days of the time it is due."   The parties having thus contracted for the payment of interest, after maturity,

until payment, the rate of interest must be regulated by the statute in force at the time of the contract. The act of July 2d, 1872, provided that "when there is no agreement for a different rate of interest," the same shall be six per cent., and that it shall be lawful "to contract for payment and receipt of any rate of interest." The lawful rate of interest was the *rate agreed upon between the parties,* which, in this case, was eight per cent. Was this contract for interest after the maturity of the note, "a contract for payment and receipt of *any rate of interest* within the meaning of the statute?" It has been so expressly held by this court. "There is nothing," say the court, in *Hubbard* v. *Callahan,* 42 Conn., 527, "in the nature of the transaction, nor in the customary mode of loaning money, that makes it unreasonable or unjust to allow parties to contract for a rate of interest after maturity, as well as before, but rather the contrary is true." See also *Brannon* v. *Hursell,* 112 Mass., 63, 71.

2. The stipulation signed by the husband is claimed by the plaintiffs not to be admissible to show when the note matured, "as that was settled by positive law." The finding of the court, that "at the time the loan was made and the note executed, the stipulation was executed, and *as a part of the same transaction,*" must be conclusive as to its admissibility. If the *note* was admissible as against William H. Seymour, the *stipulation* was also, as *together* they constituted the contract between the parties.

CARPENTER, J. In *Hubbard* v. *Callahan,* 42 Conn., 524, a note was made payable in one year after date, with interest after due at the rate of fifteen per cent. per annum. The contract when made was legal; when the note fell due the law forbade the taking of a greater rate of interest than seven per cent. This court held that the plaintiff was entitled to recover fifteen per cent. interest after due.

In *Suffield Eccl. Society* v. *Loomis,* 42 Conn., 570, the note was payable in three years after date, with no contract for interest after maturity. The contract rate of interest was above the legal rate after the note fell due. This court held

that the plaintiff could recover, after maturity, only the statutory rate of interest.

In both these cases the court enforced the contract according to the intention of the parties. In the present case the contract of the parties, as understood and intended by them, if legal, will be sustained.

The note now under consideration was on demand, and was outstanding several years. The rate of interest expressed in the note was eight per cent, which was a legal rate at the time the note was given. Before the principal was paid the law forbade the taking of more than seven per cent. The plaintiffs having paid eight per cent, bring this action to recover the penalty for taking usurious interest.

They claim that the note was due by force of the statute at the expiration of four months, and that after that time the defendants could legally take but seven per cent. The statute is as follows: "Any negotiable promissory note payable on demand, which remains unpaid four months from its date, shall be considered as overdue and dishonored after that time." Gen. Statutes, page 343, sec. 2. This statute was not designed to change the real contract between the parties. Its object was to make certain that which before was indefinite and uncertain, and it relates to the rights and liabilities of third parties who may become interested in such notes as indorsers, guarantors or purchasers. In respect to them such notes are not ordinarily dishonored until the expiration of four months. After that time they are dishonored. Their rights and liabilities materially depend upon that fact, while the rights and liabilities of the immediate parties to the note are unaffected by it. Hence the statute may well affect the former and not the latter. The payee may sue and collect, and the maker may pay, the note at any time within four months as well as after. A third party purchasing the note at any time within four months takes it free from equities; after that time he takes it subject to them. The payee or holder, in order to retain the security of an indorser or guarantor, must take certain steps at the end of four months. The payee, as between himself and the maker, holds it at all times subject

to equities, and the liability of the maker is the same whether dishonored or not, and irrespective of demand and notice or suit at maturity.

It is manifest that the parties intended this transaction as a loan to continue for a term of years.   The contract between William H. Seymour and the defendants, which the court found was a part of the transaction, tends to show this, and was admissible for that purpose.   The rate of interest as fixed by the note was expected and intended by the parties to be paid so long as the loan should continue.   That being a legal rate when the note was made, it continued such until it was paid.

This interpretation gives effect to the intention of the parties and does the plaintiffs no injustice.   If they regarded the rate of interest as exorbitant they might at any time have terminated the contract by paying the principal.   So long as they paid interest they paid it pursuant to their contract, and now have no cause of complaint.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.