## THE WINSTED SAVINGS BANK *vs.* THE TOWN OF NEW HARTFORD ET AL.

First Judicial District, Hartford, October Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

An order for the payment of money which specifies no time of payment is in legal effect, and as between the parties, due and payable immediately. It is, however, competent for the parties to agree—as they did in the present case—that the loan evidenced by such an obligation shall remain a continuing one until such contractual relation is terminated either by payment by the debtor, or by demand or suit by the creditor.

Interest upon a loan reserving less than six per cent. should be computed up to the date of the defendant's default at the rate fixed by the parties, and thereafter, in the absence of any agreement, at the legal rate.

In 1897 the defendant town consolidated its school districts and for five years thereafter assumed and maintained at its own expense the exclusive control of its public schools. In 1902, by a vote of the town, the old system was restored and the pre-existing districts re-assumed their functions and took possession and control of the property owned by them respectively before the consolidation. *Held* that under the provision of § 2198 of the General Statutes of 1888 (Rev. 1902, § 2219), to the effect that towns consolidating their school districts " shall assume the property and be responsible for the debts of the districts," the action taken by the town in respect to consolidation was in itself an assumption of the property of the districts and of liability for their debts, notwithstanding the steps prescribed in § 2198 looking to an equitable adjustment of property rights and liabilities as between the taxpayers of the several districts were not pursued by the town officials to whose

discretion the matter was intrusted by vote of the town; and therefore the town was liable for the interest which had accrued during the period of consolidation on a debt of one of the school districts. The town contended that a judgment against it for such interest would be inequitable to the taxpayers of the several districts. *Held* that the facts disclosed by the record gave no sufficient support to such claim, and the town was in no position to take advantage of that possibility, inasmuch as the predicament was due to the failure of its own officials in 1897 to take the statutory steps which would have equalized any burdens upon the taxpayers which might have been created by the new conditions.

Argued October 3d—decided November 7th, 1905.

ACTION to recover the amount of a loan to a school district, brought to and tried by the Superior Court in Litchfield County, *Shumway, J.;* facts found and judgment rendered for the plaintiff to recover $6,500 of the school district, but with interest at four per cent. only, and for the school district to recover, on its cross-complaint, $1,300 of the town, from which both the plaintiff and the town appealed. *Error on plaintiff's appeal; no error on appeal of the town.*

Prior to October 4th, 1897, there were in the defendant town of New Hartford nine school districts and three parts of districts. In each of said districts and parts of districts was a schoolhouse and other school property belonging to the respective districts. Three of the districts had outstanding liabilities. The defendant school district was one of them. Its indebtedness was $6,500, represented by four orders originally purchased and now held by the plaintiff, and each of the following tenor, to wit:—

" New Hartford, Conn., Nov. 15, 1886. Treasurer North End School District. Pay to the order of Winsted Savings Bank Two Thousand Dollars, for Renewal Construction Acct. Orders. F. A. Jewel, George E. Bancroft, District Com. Accepted Nov. 15, 1886. Geo. A. Spencer, Treas."

Upon these orders $1,500 principal had been paid. When these orders were taken by the plaintiff and the loan thus made, the parties agreed that the interest thereon should be at the rate of four per cent. per annum. Interest at said

rate was paid semi-annually to November 15th, 1898. No other payments of principal or interest have been made. The indebtedness of the other districts amounted to $600.

At the annual town-meeting of said town held on October 4th, 1897, it was voted that the school districts of the town should be consolidated. The town thereupon assumed the exclusive control of the property of the several districts and the exclusive management of the schools, the maintenance of which it thereafter continued at its expense for five years.

At the annual town-meeting in October, 1898, it was voted " that any adjustment of school property deemed advisable under present consolidation of districts be left with the town school committee and the selectmen." Pursuant to this vote and by authority of the chairmen of the boards named, an appraisal of all the buildings belonging to the several districts and parts of districts was made. No further action was ever taken in the direction of an adjustment, as provided in § 2198 of the Revised Statutes of 1888, then in force, and no transfer of property by the districts to the town was ever made.

At the annual town-meeting in October, 1902, it was voted to abandon town control and re-establish the pre-existing school districts, and thereupon the several districts resumed their former functions and possession and control of the property owned by them before consolidation was voted. During the following February the selectmen and town school committee met for the purpose of adjusting all claims between the town and districts, and decided that the property of the districts was in as good condition as before the town assumed its control, and that the town had no claim against the districts for repairs or improvements. The town never took any action assuming the liabilities of said districts other than that recited, and the defendant district never requested the selectmen to pay its said indebtedness to the plaintiff, or any part thereof, or the interest thereon, or to assess the amount thereof against the district on the grand list.

In 1903 the two districts which had the $600 of in-

debtedness paid the same, together with all accumulated interest.

No question was made as to the legality of the action taken by the town.

The answer of the defendant district contained a cross-complaint which set up the facts connected with the consolidation, and asked by way of equitable relief that in the event that judgment should be rendered against it or against both defendants, in favor of the plaintiff, the portion of said judgment which each defendant, as between themselves, should pay, should be determined and adjudged.

The court rendered judgment in favor of the plaintiff against the defendant district to recover the principal sum due upon said orders, with interest at four per cent. from November 15th, 1898, and in favor of the defendant district against the defendant town to recover the amount of interest for the five years of consolidation, to wit, $1,300.

*Samuel A. Herman*, for the appellant (plaintiff).

*Wellington B. Smith* and *Frank B. Munn*, for the appellant (defendant town of New Hartford).

*Donald T. Warner*, for the appellee (defendant North End School District).

PRENTICE, J. The plaintiff complains that the amount of its judgment is too small, in that interest upon the principal sum was computed at four per cent. and no more, for the whole period of time from November 15th, 1898, the date to which interest had been paid, down to the date of judgment. It contends that interest at the rate of six per cent. should have been allowed as damages from either said November 15th or the date of the service of the writ.

As no time of payment is stated in the orders they were in legal effect payable on demand. *Bacon* v. *Page*, 1 Conn. 404; *Raymond* v. *Sellick*, 10 id. 480. As demand obligations they were, as between the parties, due and payable

immediately. *Curtis* v. *Smith*, 75 Conn. 429. The date
fixed in the instrument for payment may not, however, be
that when payment is in fact intended. *Hubbard* v. *Callahan*,
42 Conn. 524. The intent governs and creates the real
contract. *Seymour* v. *Continental Life Ins. Co.*, 44 Conn. 300.
In this case the intent of the parties—that the loans evi-
denced by these orders should be carried by the plaintiff as
continuing ones, and that the collateral agreement which
was made as to the interest should continue to fix the in-
terest rate until such time as one of the parties should ex-
ercise its right to terminate that contractual situation by
demand or suit, on the one hand, or payment on the other—
is apparent. The contract must therefore be regarded as
one to that effect. To hold otherwise and permit the plain-
tiff to receive a higher rate of interest, whether in the form
of damages or of interest proper, for any period prior to the
time when it took appropriate steps to put an end to the
relation it had by express agreement created, would be to
violate the plain intent of the parties. There is no rule of
law which compels such violation. *Seymour* v. *Continental
Life Ins. Co.*, 44 Conn. 300; *Hubbard* v. *Callahan*, 42 id.
524. The first act to which the finding fixes a date by
which the plaintiff, through appropriate action, sought to
declare its termination of the long existing status, was the
commencement of the present suit. The court therefore
did not err in computing interest at the agreed rate of four
per cent. for the time preceding the date of the service
therein. *Jencks* v. *Phelps*, 4 Conn. 149.

With respect to the time subsequent to the beginning of
the action, different considerations in part control. The re-
covery for this period is in the nature of damages for the
breach of contract. *Selleck* v. *French*, 1 Conn. 32, 33.
Parties may, in the absence of a statute to the contrary,
agree as to the basis upon which the assessment shall be
made. *Hubbard* v. *Callahan*, 42 Conn. 524. As to what
the rule should be in the absence of such an agreement or
controlling statutes, the decisions in different jurisdictions
differ. Unfortunately those in our own do not leave some

aspects of the subject free from doubt. It seems to have been well settled that where the agreed rate of interest was higher than the legal rate, the agreed rate would be used as the measure of damage after breach. *Beckwith* v. *Hartford, P. & F. Railroad,* 29 Conn. 268; *Adams* v. *Way,* 33 id. 419; *Hubbard* v. *Callahan,* 42 id. 524. With respect to a reverse situation the cases are by no means explicit or satisfactory. Some quite plainly indicate the conclusion that the legal rate would be used. *Fisher* v. *Bidwell,* 27 Conn. 363; *First Eccl. Soc.* v. *Loomis,* 42 id. 570. Others, reference being had especially to the first two cited,—to the proposition that the conventional rate would be adopted where it is higher than the legal—are susceptible of a contrary inference. They may, however, be readily distinguished by limiting their doctrine, as JUDGE LOOMIS in *Hubbard* v. *Callahan, supra,* stated it, as intended to be applied to cases of the kind then under consideration. The reason for the position assumed in these cases is forcibly suggested in the first of them, where it is urged that the borrowers could not have been expected to derive a benefit in the rate of compensation from their breach of contract. The court was not disposed to lay down a doctrine which would result in a reward to wrong-doers for their wrong-doing. *Beckwith* v. *Hartford, P. & F. Railroad,* 29 Conn. 268, 271. A reversal of the conditions puts a changed aspect upon the situation. Justice and equity no longer call for a continuance of the agreed rate after breach. On the contrary they call for some rule which will not permit one, after the dishonor of his contract, to compel its unwilling continuance until judgment can be obtained at a rate lower than what the law regards as the ordinarily fair one, and as low as the obligee was satisfied with before the dishonor. The aim of the law is to award as damages what will be fair compensation. The legal rate of interest is under ordinary circumstances chosen as the measure of this compensation for the wrongful detention of money, as furnishing a convenient and presumably fair and equitable rule. *Beckwith* v. *Hartford, P. & F. Railroad,* 29 Conn. 268; *Fisher* v. *Bidwell,* 27 id. 363. A,

lesser rate, which one might be willing to accept under favorable conditions, could scarcely be presumed to be a just one to force upon him *ad invitum* and under changed conditions which he could not be assumed to have contemplated when his agreement was made. We are of the opinion that reason and justice alike support the view, that one who is unlawfully deprived of money which is his due, should, statutory provisions to the contrary aside, be entitled to recover, as damages for the unlawful detention, interest at not less than the legal rate, unless he has otherwise agreed.

Section 4600 of the General Statutes, following an Act first passed in 1873, provides that " interest at the rate of six per cent. a year, and no more, may be recovered and allowed in civil actions, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable." It is unnecessary to determine the full scope and effect of this provision. It is sufficient for the purposes of this case to observe not only that nothing in it can be held to militate against the plaintiff's right to recover at the rate of six per cent. since action brought, but also that its terms comport with such recovery even if they do not expressly sanction it.

The court therefore erred in not including, in the damages awarded the plaintiff, interest upon the principal sum at the rate of six per cent. from the date of the commencement of the action to the date of judgment.

The defendant town complains of the judgment rendered against it in favor of the defendant district, for the recovery of the amount of the interest for the five years during which the vote of consolidation was in force. The reasons for this complaint are in the record stated in various forms. They are in substance, however, only two, to wit: first, that the town never assumed the property of the district and never became responsible for its obligations ; and second, that the imposition of this interest charge upon the town would be unjust to the taxpayers in other districts and inequitable as between those concerned.

The first of these claims is based upon the propositions that neither the vote of consolidation, nor that vote followed by the actual assumption and use of the property of the districts in execution of the vote, sufficed to vest the town with the districts' property and render it responsible for their debts.    The contention is, that such a vesting and responsibility could only result either from an express assumption, the agreement of the parties, or a compliance with some or all the provisions of chapter 136 of the Revision of 1888 relating to the adjustment of property and obligations as provided in § 2198, and to the payment of debts as provided in § 2206.    The statutes are not to be so interpreted.    To each town was left the option to abolish the school districts and parts of districts therein, assume the management and control of the schools, and constitute itself a single consolidated school district.    General Statutes (1888), § 2193.    It was provided that upon the affirmative vote of a town it should assume the property and be responsible for the debts of the districts.    General Statutes (1888), § 2198.    The meaning and effect of this enactment is manifest.    By force of it the action of a town which accomplished the abolition of the districts, the assumption and control of the schools, and the creation of a single union district, was also made to accomplish the assumption of the property of the districts and of the liability for their debts.    The provisions of § 2198 looking to an equitable adjustment of property rights and liabilities as between the taxpayers of the several districts, and those of § 2206 regulating the payment of certain claims and demands upon the abolished districts, related to proper details in the convenient and equitable completion of the work of consolidation, but they were not in any way made conditions precedent to the accomplishment of the essential results of abolition of existing districts, assumption of school control, constitution of a town district, and devolution of district assets and liabilities.

It is contended that this construction rendered it possible for a town to appropriate the property of a district and make no proper compensation therefor by the statutory

method of an appraisal and adjustment by a tax levy, or otherwise. We have no occasion to decide whether such a possibility existed. If, however, the statutes failed of completeness in this regard through the substitution of the word " may " in the place of the original " shall " of the Act of 1865, it yet remains that the other language of the statutes, and their history and general scheme, leave little room for doubt that the construction we have given is the correct one. Public Acts of 1865, Chap. 112, p. 107; Public Acts of 1866, Chap. 102, p. 55.

The claim that a judgment against the town for this interest would be inequitable in its effect upon the taxpayers in the several districts is one to which the record gives no sufficient support. The facts which are said to indicate that result are that all of the districts had property, that all save two in addition to the defendant had no liabilities and these two insignificant ones in comparison with those of the defendant, that these two have since the resumption of district control paid their debts and interest, and that there never was an appraisal, estimate and adjustment of assets and liabilities to determine the equitable status of the several districts and equalize the burden upon their taxpayers as prescribed in § 2198 (Rev. 1888). None or all of these facts tend to show that the judgment would lead to an inequitable distribution of burdens, as the town's brief assumes. The most that can be claimed of them is that they indicate such a possibility. What the fact is cannot be told from the facts upon this record. If inequity would result the fault lies at the door of the town and its authorities who did not in 1897 take the statutory steps which would have created an equitable status under the new conditions then created. The law provided a way to that result. The town authorized its officials to take the necessary action. An appraisal was made by these officials. They went no further. It is fair to assume that this failure to complete the course contemplated by the statute was due to a decision that the existing condition required no action to render it an equitable one for the future; in other words, that the relation of the

assets to the liabilities of the several districts, and of the excess of the assets of each to the grand lists of each and of all, was one which represented a fair distribution of the contribution to the joint fund vested in the town for school purposes by the consolidation. If the then status and conditions were equitable for the purposes of permanent consolidation, then it is equitable to all concerned that the town should bear the burden determined thereby; and an imposition upon it of the interest of any and every portion of the debts of the several districts for the period of consolidation becomes precise equity. The claim of the town, that there would be inequity in such a course, involves the proposition that it was seeking to do inequity when in 1897 it failed to carry out an equitable adjustment. If by its own wrong it neglected to make a needed adjustment in order that an equitable status should be created, it is in no position now to take advantage of it. It is in no position to appeal to unproven possibilities. It cannot complain if, in the absence of contrary proof, it is held to the fair presumption from its acts, judged upon the theory that it did its duty. The fact that two of the districts have volunteered to pay the small amount of interest which matured upon their indebtedness during the consolidation period cannot of course operate to deprive this defendant district of its rights.

The brief of counsel for the town assumes that if liability for the debts of the district rested upon the town during the five years of consolidation, and its claim of inequity was not well founded, the judgment against it was justified. This assumption is correctly made. Under the circumstances indicated—which are, as we have seen, those which exist in the case—the equity of the judgment is clear. The town as the result of its own action took to itself all the property of the district and became responsible for its indebtedness. During the five years which followed it used and had the benefit of this property and was bounden to pay this indebtedness. Obligation for the indebtedness carried with it obligation for the interest thereon, and the duty to pay it as it matured. Had the town performed this duty and promptly

met its obligation in this regard, the interest in dispute would have been paid. As payment thereof was not made at maturity, suits therefor might have been successfully maintained against it. Had payment been made or enforced, it would scarcely have been contended that the town could now recover back its payments. Upon what theory ought it now to be in a better position as the result of its nonperformance of its legal duty? Had the consolidation status remained permanent, it is quite clear that the town would have paid the debt and interest without questioning. In what respect does the return to the district system change the equitable situation as to the interest earned prior thereto? When the return was made the district received back its property unaugmented, and is held liable for the pre-existing debt. Upon what principle is it to be said that this indebtedness may be justly increased? When the town took over the property of the districts and became obligated for their debts, what it really got in each case was the excess of property over liabilities. When the former system was resumed and the property and pre-existing debts remained unchanged, the purpose of the law was that it should restore each district to the *status quo*. If we assume, as we have seen we must, that the excess of property in the case of each and all of the districts represented an equitable proportional contribution to the joint net property vested in the town by the consolidation, then it follows that if the town while taking and using the property of any district were permitted to ignore its debts it would be given an inequitable advantage, and that if any district receiving back unaugmented property is to have cast upon it an increment of obligations, it is not being restored to the status in which the consolidation movement found it.

The brief on behalf of the town presents the claim that the court charged the town interest for five years, when under the pleadings only four years should have been allowed. Neither the claims below, nor the appeal, furnish any basis for this contention.

There is error upon the plaintiff's appeal, and no error

upon the appeal of the town of New Hartford, and the cause is remanded for a correction of the judgment in favor of the plaintiff against the North End School District comformably to the conclusions herein stated.

In this opinion the other judges concurred.