******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHELE DILIETO ET AL. *v.* COUNTY OBSTETRICS
AND GYNECOLOGY GROUP, P.C., ET AL.
(SC 19297)

Palmer, Zarella, McDonald, Espinosa and Robinson, Js.

Argued December 4, 2014—officially released May 19, 2015

*Jeffrey R. Babbin*, with whom was *Benjamin M. Daniels*, for the appellants (named defendant et al.).

*Alinor C. Sterling*, with whom was *Rodney S. Margol*, for the appellee (named plaintiff).

*Opinion*

PALMER, J. When this case was last before this court, we concluded that the trial court, *Shaban*, *J.*, had applied the wrong legal standard in concluding that the named plaintiff, Michele DiLieto (plaintiff), was not entitled to postjudgment interest under General Statutes (Rev. to 1995) § 37-3b[1] following a judgment in her favor against the named defendant, County Obstetrics and Gynecology Group, P.C., and the defendants Scott Casper, a physician, and Yale University School of Medicine,[2] arising out of their medical malpractice. *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38, 41, 46, 74 A.3d 1212 (2013) (*DiLieto III*). Accordingly, we remanded the case to the trial court for consideration of the plaintiff's request for postjudgment interest under the correct legal standard. See id., 60. Thereafter, on November 5, 2013, the trial court, *Agati, J.*, awarded the plaintiff postjudgment interest, calculated at an annual rate of 8 percent, from July 14, 2006, the date of the underlying judgment, until October 28, 2010, the date on which the judgment was satisfied, in the amount of $3,178,696.70. The trial court also awarded the plaintiff interest, calculated at an annual rate of 3 percent, on the postjudgment interest award, from October 28, 2010, until that award is paid in full. On appeal,[3] the defendants contend that the trial court, in awarding 8 percent interest on the underlying judgment, improperly considered the rate of return on certain investments that the plaintiff claims she would have earned if the judgment had been satisfied in a timely manner. Although the defendants do not challenge the authority of the trial court to award interest on the postjudgment interest award, they do contend that the court improperly awarded such interest from October 28, 2010, the date on which the judgment was satisfied, rather than from November 5, 2013, the date on which the trial court awarded postjudgment interest. We reject the defendants' first claim but agree with their second claim. Accordingly, we reverse in part the order of the trial court.

The relevant facts and procedural history are not disputed. The plaintiff commenced this action, alleging, inter alia, that the defendants negligently had removed her reproductive organs and pelvic lymph nodes. Id., 41. Following a trial, the jury found the defendants liable and awarded the plaintiff $5.2 million.[4] *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 124, 998 A.2d 730 (2010) (*DiLieto II*). The trial court, *Eveleigh, J.*, rendered judgment in accordance with the jury verdict and, in addition, awarded the plaintiff $5,886,113.64 in offer of judgment interest pursuant to General Statutes (Rev. to 1997) § 52-192a, as well as costs, for a total award of $11,110,045.79. Id., 109–10, 124. The defendants appealed, and we affirmed the judgment except with respect to the award of offer

of judgment interest, which we concluded was calculated from an incorrect date. See id., 109, 145, 164. We therefore remanded the case to the trial court with direction to award offer of judgment interest from the correct date; id., 164; which resulted in a revised total award in the amount of $9,255,140. Thereafter, the plaintiff filed a motion for, inter alia, postjudgment interest on the revised award pursuant to § 37-3b. *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 310 Conn. 42. The trial court, *Shaban, J.*, denied that portion of the motion seeking postjudgment interest, concluding that, because the defendants were under no legal duty to pay the judgment during the pendency of their appeal, the plaintiff had failed to demonstrate that the defendants "wrongfully" had detained money that was due and payable to the plaintiff under the judgment, the standard that this court had used in addressing claims for interest under General Statutes § 37-3a;[5] id., 43; which governs interest awards in certain civil actions not involving negligence.

The plaintiff appealed from the trial court's denial of postjudgment interest, claiming that the trial court incorrectly had applied the wrongful detention standard of § 37-3a in concluding that she was not entitled to postjudgment interest under § 37-3b. Id. After clarifying the standard that we had applied for purposes of § 37-3a, we agreed with the plaintiff and reversed the trial court's decision. See id., 47–54, 60. We explained that, "although the standard for an award of interest is the same under both § 37-3a and . . . [§ 37-3b], the trial court misconstrued that standard in denying [the plaintiff's] motion for postjudgment interest under § 37-3b. . . . [I]n the context of § 37-3a, a wrongful detention of money, that is, a detention of money without the legal right to do so, is established merely by a favorable judgment on the underlying legal claim, so that the court has discretion to award interest on that judgment, without any additional showing of wrongfulness, upon a finding that such an award is fair and equitable. Consequently, contrary to the determination of the trial court, the fact that a defendant has a legal right to withhold payment under the judgment during the pendency of an appeal is irrelevant to the question of whether the plaintiff is entitled to interest under § 37-3a." Id., 48–49. In light of our determination, we remanded the case to the trial court for consideration of the plaintiff's request for postjudgment interest under the correct legal standard. See id., 60. In doing so, we observed that § 37-3b does not identify any factors that the trial court either must or should consider in deciding whether to award postjudgment interest, and, therefore, the trial court was free to consider any factors that it deemed relevant to that determination. Id., 54.

On remand, the plaintiff filed an amended motion for an award of postjudgment interest, calculated at an annual rate of 10 percent, the maximum rate allowed

under § 37-3b, from July 14, 2006, the date of the underlying judgment in the medical malpractice action, until October 28, 2010, the date on which that judgment was satisfied. She also sought interest calculated at an annual rate of 10 percent on the postjudgment interest award, from October 28, 2010, until that award is paid in full. In lieu of presenting evidence, the parties filed a stipulation with the court as to the rate of return on certain investments that the plaintiff could have earned if the defendants had paid the judgment in a timely manner. Specifically, the parties stipulated that the annual interest rates for the one year United States Treasury bill, the three and ten year United States Treasury notes, and the twenty and thirty year United States Treasury bonds, consistently averaged at or below 5 percent during the relevant time period.[6] The parties also agreed that, during the relevant time period, the compounded rate of return on gold, the Vanguard Emerging Markets Stock Index Fund and the Vanguard Long Term Treasury Fund was 17.9 percent, 12.1 percent, and 9.7 percent, respectively. The stipulation further provided that the plaintiff, if called as a witness, would testify that, if the judgment had been satisfied at the time it was rendered, she would have invested the money "in long-term Treasury bills." Finally, pursuant to the stipulation, the parties reserved the right to make any arguments based on the stipulated facts or any other part of the record, and the plaintiff acknowledged that the defendants were free to argue that the court should deny the plaintiff's motion for postjudgment interest in its entirety.

Subsequently, on October 31, 2013, the trial court, *Agati, J.*,[7] held a hearing at which the defendants argued that the plaintiff's motion for postjudgment interest should be denied because the plaintiff already had been well compensated for her injuries by virtue of the jury award of more than $5 million and the award of more than $4 million in offer of judgment interest. The defendants further argued, however, that, if the court does award postjudgment interest, it should do so at a rate of 3 percent because interest rates during the relevant time period were at historic lows. The defendants also argued that, in choosing a rate of interest, the court should not consider the rates of return on certain speculative investments that the plaintiff claims she would have earned if the judgment had been satisfied in a timely manner. Rather, they maintained, the court should base the award solely on the rates of interest that were available on United States Treasury securities or other risk-free investments. Finally, the defendants urged the court to reject the plaintiff's request for interest on the postjudgment interest award from October 28, 2010, because, the defendants argued, interest on an award of damages does not begin to accrue until the award is made, and the trial court had not yet decided whether to award the plaintiff any postjudgment

interest.

On November 5, 2013, the trial court awarded the plaintiff postjudgment interest at an annual rate of 8 percent, from July 14, 2006, until October 28, 2010, in the amount of $3,178,696.70. The trial court also awarded the plaintiff interest on the postjudgment interest award, calculated at an annual rate of 3 percent, from October 28, 2010, until the award is paid in full. In support of its decision, the trial court stated that it had reviewed the parties' stipulation and "considered the various factors as presented by the parties which militate for or against an award of postjudgment interest. The court is cognizant of the fact that it was the policy of this state to award postjudgment interest mandatorily in this type of action for many years prior to 1981, and it has been the state's policy to do so since May 27, 1997. The court is following the . . . Supreme Court's direction that a paramount factor for the trial court to consider in deciding whether to award postjudgment interest is the purpose of such interest, namely, to compensate the prevailing party for the loss of the use of the money owed from the date of the judgment until the date that the judgment is paid." (Emphasis omitted; internal quotation marks omitted.)

The trial court further stated that it had considered the parties' arguments with respect to whether the court was authorized to award interest on the postjudgment interest award from October 28, 2010, the date on which the judgment was satisfied. The court concluded that it was so authorized, reasoning that "the postjudgment interest should have been awarded and included at the time payment was made in satisfaction of the judgment. However, this [did not occur]. Instead, there was an appeal and additional postjudgment motions, which have delayed the payment of . . . postjudgment interest to the plaintiff. As the Supreme Court made clear in *DiLieto III*, the plaintiff is to be compensated for the loss of the use of the money owed from the date of the judgment until the judgment is paid.

"In view of the fact that the judgment is modified to include [the] postjudgment interest . . . now awarded by this court, the judgment is as of this date not satisfied.

"Therefore, the court orders that postjudgment interest be paid on the unsatisfied portion of the judgment, i.e., the $3,178,696.70, at the rate of [3] percent per year from the date it was due, i.e., October 28, 2010, until the total judgment is paid in full."

The defendants appealed from the trial court's order to the Appellate Court. Before we transferred the appeal to this court, the defendants filed a motion for articulation in which they requested that the trial court explain the legal and factual bases for its decision to award 8 percent postjudgment interest on the judgment and 3 percent interest on the postjudgment interest award

from October 28, 2010. After the trial court denied the defendants' motion, the Appellate Court granted, in part, the defendants' motion for review and ordered the trial court to articulate the legal and factual bases for its decision to award postjudgment interest at a rate of 8 percent on the judgment. In response, the trial court issued the following articulation: "The factual basis was what the court reviewed by way of stipulation of the parties regarding varying interest rates that could apply, as well as oral argument by the parties as to interest rates that the court could choose. . . .

"The legal basis for the court's order was . . . *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, [supra, 310 Conn. 59–60], which concluded as follows: Of course, the trial court's discretion under § 37-3b includes the discretion to choose a fair rate of interest not to exceed 10 percent per annum. . . .

"This court exercised its discretion in choosing a fair rate of interest in the amount of 8 percent." (Citations omitted; internal quotation marks omitted.)

On appeal to this court, the defendants renew the claims that they raised in the trial court. Specifically, they contend, first, that any award of interest under § 37-3b must be based solely on the rate of return on risk-free investments such as United States Treasury securities and may not take into account rates of return on other, more speculative investments, and, second, that the trial court improperly awarded interest on the postjudgment interest award from October 28, 2010, rather than from November 5, 2013, the date that post-judgment interest was awarded. We address each claim in turn.

We do not write on a clean slate with respect to the issue of whether the trial court properly considered rates of return on investments in awarding the plaintiff postjudgment interest under § 37-3b. As we explained in *DiLieto III*, "by its plain terms, § 37-3b authorizes an award of postjudgment interest in any negligence action, to be computed from the date of judgment"; *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 310 Conn. 47; "at the rate of *ten per cent a year*, and no more . . . ." (Emphasis added.) General Statutes (Rev. to 1995) § 37-3b; see also *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 310 Conn. 60 ("the trial court's discretion under § 37-3b includes the discretion to choose a fair rate of interest not to exceed 10 percent per annum"); cf. *Sears, Roebuck & Co.* v. *Board of Tax Review*, 241 Conn. 749, 765–66, 699 A.2d 81 (1997) (construing similar language in § 37-3a as establishing maximum interest rate and as not precluding award of interest below stated rate). As we also observed in *DiLieto III*, because § 37-3b does not identify the factors that a trial court should consider in exercising its discretion under that provision, the trial court is free to consider whatever factors

may be relevant to such a determination. *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 310 Conn. 54. Specifically, we stated that "a paramount factor for the trial court to consider in deciding whether to award postjudgment interest is the purpose of such interest, namely, to compensate the prevailing party for the loss of the use of the money owed from the date of the judgment until the date that the judgment is paid. In exercising its discretion under § 37-3b, the trial court should identify any other factors or considerations that may militate for or against an award of postjudgment interest. In sum, the trial court should consider any and all factors that are relevant to its determination. Of course, the trial court's discretion under § 37-3b includes the discretion to choose a fair rate of interest not to exceed 10 percent per annum." (Footnote omitted.) Id., 59–60.

The defendants contend, however, contrary to our explication of § 37-3b in *DiLieto III*, that the trial court's broad discretion to choose a fair rate of interest not to exceed 10 percent per annum does not include the discretion to choose an interest rate based on the rates of return on investments generally but, rather, must be based exclusively on risk-free investments such as United States Treasury securities, which, they argue, are the "appropriate benchmark to measure the value of [the] plaintiff's lost use of money while also fulfilling [the] compensatory purpose [of § 37-3b]." The defendants contend that the trial court, in considering the rates of return on other investments, in particular, the mutual funds identified in the parties' stipulation, "transformed postjudgment interest from a vehicle of compensation into an opportunity for [the] plaintiff to reap a guaranteed return from what otherwise would have been a risky investment."[8]

The defendants' construction of § 37-3b is unpersuasive for several reasons, not the least of which is that it is predicated on a reading of the statute that attributes to the legislature an intent to impliedly limit a court's discretion to consideration of specific factors not enumerated in the statute. This interpretation, however, is inconsistent with the tenet of statutory construction that, "[when] statutory language is clearly expressed . . . courts must apply the legislative enactment according to the plain terms and cannot read into the terms of a statute something which manifestly is not there in order to reach what the court thinks would be a just result. . . . [In other words] the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Citation omitted; internal quotation marks omitted.) *State* v. *Hanson*, 210 Conn. 519, 529, 556 A.2d 1007 (1989). Section 37-3b authorizes an award of postjudgment interest at an annual rate of up to 10 percent and does not purport to restrict the discretion of the trial court to choose any rate within that range. We must presume that, if

the legislature had intended to allow postjudgment interest at a rate not to exceed the interest rates applicable to United States Treasury securities, or had intended to link interest under the statute to any other economic indicator, it would have expressed that intent explicitly. See, e.g., *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 771 n.17, 900 A.2d 1 (2006) (legislature knows how to enact legislation consistent with its intent). It is not the province of this court, under the guise of statutory interpretation, to legislate such a policy, even if we were to agree with the defendants that it is a better policy than the one endorsed by the legislature as reflected in its statutory language.[9] Cf. *Emberton* v. *GMRI, Inc.*, 299 S.W.3d 565, 585 (Ky. 2009) ("the fact that a [12] percent interest rate in today's economic climate may be well above the marketplace norm is a matter properly to be considered by the [legislature] because that body has the power and discretion to lower the de facto legal interest rate contained in [the postjudgment interest statute]" [internal quotation marks omitted]). "Accordingly . . . [such issues] are better addressed to [the] legislature and the political process rather than [the courts]." Id.; see also *Eskay Plastics, Ltd.* v. *Chappell*, 34 Wn. App. 210, 213, 660 P.2d 764 (1983) ("[I]t is for the [l]egislature, not the courts, to determine whether the public is better served by higher [or lower postjudgment] interest rates. The role of the court does not include a duty to review the wisdom of otherwise lawful legislative acts.").

The fact that the legislature has linked interest rates to United States Treasury securities in other statutes is strong evidence that it did not intend to do so for purposes of § 37-3b. See, e.g., *Saunders* v. *Firtel*, 293 Conn. 515, 527, 978 A.2d 487 (2009) ("when a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]). General Statutes § 37-3c, the provision governing the rate of interest recoverable in condemnation cases, provides in relevant part that "interest shall be calculated from the date of taking at an annual rate equal to the weekly average one-year constant maturity yield of United States Treasury securities, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of taking . . . ." Section 37-3c demonstrates that the legislature will link interest rates to specific economic indicators when it concludes that it is appropriate to do so. In the absence of similar language in § 37-3b, we will not impute to the legislature an intent to limit the court's discretion in the same manner as it has under § 37-3c.

Finally, it is not unreasonable for the legislature to permit courts to consider potential investment income in choosing a fair rate of interest under § 37-3b. As

the New York Court of Appeals stated in addressing a similar claim: "Interest is designed to compensate for the loss that results when a claimant is deprived of the use of money to which he or she was entitled from the moment that liability was determined . . . . If a successful claimant was able to access a monetary award immediately, the claimant could invest those proceeds in a wide range of prudent investment choices, including money market funds, corporate bonds or reasonably-risked equity funds. Hence, it makes sense [for a court] to consider a full spectrum of investments—both public and private—in determining an appropriate rate of interest." (Citation omitted; internal quotation marks omitted.) *Denio* v. *New York*, 7 N.Y.3d 159, 167, 851 N.E.2d 1153, 818 N.Y.S.2d 802 (2006). Indeed, the New York Court of Appeals further observed "that it would be illogical and unfair to focus exclusively on the lowest-returning investments in deciding whether to assign a lower interest rate." Id. That, however, is precisely what the defendants in the present case would have the trial court do—focus exclusively on the lowest-returning investments in the parties' stipulation. We do not believe that such a restriction on the court's discretion is supported by the statute's language or purpose.

We note, moreover, our agreement with the plaintiff that it would be incongruous to conclude that the trial court abused its discretion in awarding postjudgment interest at an annual rate of 8 percent, because that is the rate that the legislature has set as fair compensation for loans and other agreements that contemplate interest but fail to specify a rate. See General Statutes § 37-1 (a) ("[t]he compensation for forbearance of property loaned at a fixed valuation, or for money, shall, in the absence of any agreement to the contrary, be at the rate of eight per cent a year"). This court has long recognized that interest at the legal rate is presumptively fair and equitable compensation for the detention of money after it is due and payable. See, e.g., *Winsted Savings Bank* v. *New Hartford*, 78 Conn. 319, 324, 62 A. 81 (1905) ("The aim of the law is to award as damages what will be fair compensation. The legal rate of interest is . . . chosen as the measure of this compensation for the wrongful detention of money, as furnishing a convenient and presumably fair and equitable rule."). We disagree with the defendants' contention that the legal rate is "irrelevant" to § 37-3b because postjudgment interest under § 37-3b serves a materially different purpose than interest awarded pursuant to § 37-1 (a). As we explained in *DiLieto III*, until 1983, and for well over one century before that, postjudgment interest at the legal rate was actually *mandatory* in every civil action. See *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 310 Conn. 50 n.12; see also *Little* v. *United National Investors Corp.*, 160 Conn. 534, 537, 280 A.2d 890 (1971) ("Connecticut has by statute long

provided for interest on judgments. The first enactment appears to be chapter 34 of the Public Acts of 1860. . . . [General Statutes §] 52-349 expressly provides for legal interest on judgments and [General Statutes (Supp. 1971)] § 37-1 expressly provides that the legal rate of interest shall be 6 percent . . . ." [Citation omitted.]).

For all of the foregoing reasons, we reaffirm our prior interpretation of § 37-3b as affording the court broad authority to award postjudgment interest at a rate not to exceed 10 percent per annum. As we also have observed previously, the authority vested in the court under § 37-3b includes the discretion to consider any factors bearing on its decision with respect to an award under that provision. Because the trial court in the present case reasonably concluded that evidence proffered by the plaintiff regarding the investment income that she would have realized if the defendants had satisfied the judgment in a timely manner was relevant to its determination concerning the appropriate rate of postjudgment interest, we agree with the plaintiff that the court's award of 8 percent interest was within its discretion.

We next address the defendants' claim that the trial court abused its discretion in awarding interest on the postjudgment interest award from October 28, 2010. The defendants contend that, because they were not ordered to pay postjudgment interest until November 5, 2013, such interest could be awarded only from that date forward. We agree.

As we previously have explained, interest on a judgment is awarded "from and after the date on which the court, in its discretion, determines that . . . money was due and payable." *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 255, 720 A.2d 879 (1998); accord *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 310 Conn. 51. We also have explained that "[i]nterest is [permitted] . . . as damages for not discharging a debt when it ought to be paid. . . . The important practical inquiry, therefore, in each case in which interest is in question is, what is the date [on] which this legal duty to pay, as an absolute present duty, arose." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 310 Conn. 54, quoting 1 J. Berryman, Sutherland on the Law of Damages (4th Ed. 1916) § 329, pp. 1030–31. In the present case, the trial court rendered judgment in the underlying medical malpractice action on July 14, 2006. That judgment, therefore, was due and payable on that date, with interest accruing from that date and continuing to accrue until the judgment was satisfied on October 28, 2010. The trial court, however, did not decide the plaintiff's amended motion for postjudgment interest until November 5, 2013. Accordingly, the defendants were under no legal duty to pay any postjudgment interest until that time. Indeed, as the defendants maintain,

because interest under the version of § 37-3b applicable to the present case is discretionary rather than mandatory, the trial court could have denied the plaintiff's request for postjudgment interest altogether, or have awarded a lesser amount than the plaintiff requested, which is what the trial court ultimately did. Thus, because the defendants' legal duty to pay postjudgment interest arose when the trial court, in the exercise of its discretion, awarded it, and not beforehand, interest on the award of postjudgment interest did not lawfully begin to accrue until that date.

The order of the trial court is reversed with respect to that court's award of interest on the award of postjudgment interest, and the case is remanded to that court with direction to award interest on the award of postjudgment interest at the predetermined annual rate of 3 percent from November 5, 2013, until the award of postjudgment interest is paid in full; that portion of the order of the trial court awarding postjudgment interest at an annual rate of 8 percent from January 14, 2006, until October 28, 2010, is affirmed.

In this opinion the other justices concurred.

[1] General Statutes (Rev. to 1995) § 37-3b provides: "For a cause of action arising on or after October 1, 1981, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in any action to recover damages for injury to the person, or to real or personal property, caused by negligence, computed from the date of judgment."

Section 37-3b was amended by Public Acts 1997, No. 97-58, § 2. That amendment, which makes awards of interest under § 37-3b mandatory, applies to causes of action arising on or after May 27, 1997. Because the cause of action in this case arose in 1995, the 1995 revision of § 37-3b, which applies to causes of action arising on or after October 1, 1981, but before May 27, 1997, is the provision applicable in the present case.

All references to § 37-3b in this opinion are to the 1995 revision.

[2] We hereinafter refer to County Obstetrics and Gynecology Group, P.C., Casper and Yale University School of Medicine collectively as the defendants.

[3] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The trial that resulted in this award followed an earlier trial in which the jury had returned a verdict in favor of Yale University School of Medicine and had been unable to reach a verdict with respect to Casper or County Obstetrics and Gynecology, P.C. See *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 265 Conn. 79, 82 n.2, 828 A.2d 31 (2003) (*DiLieto I*). On appeal, we agreed with the plaintiff that the trial court, *Sheldon, J.*, improperly had precluded the plaintiff from adducing certain expert testimony and, therefore, that the plaintiff was entitled to a new trial. See id., 82, 87–88, 109.

[5] General Statutes § 37-3a provides in relevant part: "(a) Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. . . ."

[6] Specifically, the parties stipulated to the following ranges of interest rates on the following United States Treasury securities from 2006 to 2009: (1) one year United States Treasury bills ranged from 4.94 percent to 0.47 percent; (2) three year United States Treasury notes ranged from 4.77 percent to 1.43 percent; (3) ten year United States Treasury notes ranged from 4.80 percent to 3.26 percent; (4) twenty year United States Treasury bonds ranged from 5 percent to 4.11 percent; and (5) thirty year United States Treasury bonds ranged from 4.91 percent to 4.08 percent.

[7] References hereinafter to the trial court are to *Agati, J.*

[8] We note that, ordinarily, postjudgment interest will be awarded soon

after the court has rendered judgment following the trial of the case, and, consequently, any claim that the court, in awarding interest under § 37-3b, should consider a particular investment necessarily would require proof both that the investment would have been made and that the investment would yield a particular rate of return in the future. Because the award of postjudgment interest at issue in the present case did not occur until many years after the conclusion of the trial, the investment that the plaintiff claims she would have made with the money that she was awarded under the judgment, if the defendants had paid that judgment immediately, *already* had produced a rate of return over the relevant time frame. In the present case, therefore, to satisfy the court that she would have received a particular rate of return on her investment, the plaintiff was required to demonstrate only that she would have made that particular investment.

[9] We note that Connecticut is certainly not the only state that authorizes postjudgment interest at rates significantly higher than the present market rates. Indeed, at least twenty states authorize postjudgment interest at a rate of 7.5 percent or higher, and, in many of those states, the interest is *mandatory*. See, e.g., Ala. Code § 8-8-10 (Supp. 2014) (7.5 percent); Cal. Civ. Proc. Code § 685.010 (a) (Deering 1998) (10 percent); Mass. Ann. Laws c. 231, § 6B (LexisNexis 2009) (12 percent); N.Y. C.P.L.R. § 5004 (McKinney 2007) (9 percent); Vt. Stat. Ann. tit. 12, § 2903 (c) (Supp. 2013) (12 percent).