CHELSEA EXCHANGE BANK, Respondent, v. GEORGE COFFING WARNER, Defendant, Impleaded with WILLIAM B. ROULSTONE, Appellant.

First Department, July 14, 1922.

Bills and notes — action on note by transferee — no proof that plaintiff knew note was accommodation note — plaintiff gave value by surrendering note of payee and collateral — plaintiff was holder in due course though note delivered with blanks unfilled — no agreement shown that note would not be negotiated — defense that note was diverted or negotiated in bad faith must be pleaded to be available.

In an action brought by a transferee of a promissory note alleged to have been given by the appellant for the accommodation of the payee who was to use it to rearrange his collateral at his bank, the defense that the note was a mere accommodation note and that the payee gave no consideration for it was established, but it was not shown that the plaintiff had any notice of the defense, and moreover, it distinctly appeared that the plaintiff gave value for the note inasmuch as it surrendered to the payee a note given by him and also surrendered a portion of collateral put up by him.

The plaintiff was a holder in due course, notwithstanding that the date of payment and the rate of interest were left blank in the note and that the blank relating to the collateral security was also unfilled and was not filled until the payee negotiated the note when the character of the securities which were put up by the payee as collateral was written in.

The note in question was not given by the appellant to the payee with the understanding that it should not be negotiated, but with the understanding that it would be returned on ten days' demand, and furthermore, the defense that the note was diverted or negotiated in fraud or bad faith was not pleaded and, therefore, is not available.

The note was negotiable in form and even if the conditions relating to the collateral to the effect that it was to be subject to a banker's lien for other indebtedness transgressed the law as to negotiability, the collateral put up was not that of the maker, and he cannot, therefore, complain of those provisions.

APPEAL by the defendant, William B. Roulstone, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 18th day of November, 1921, upon the verdict of a jury rendered by direction of the court.

*Davies, Auerbach & Cornell* [*Charles H. Tuttle* of counsel], for the appellant.

*William West Shaw,* for the respondent.

PAGE, J.:

The action was brought on a promissory note which was prepared by taking a blank collateral security note of the Chelsea Exchange Bank and striking out the name of the bank and writing above it the name of George Coffing Warner or order and by striking out in different places in the blank the word " bank " and writing over it the word " payee." There were several blanks which were not filled in. The first two are as follows: " On ———— for value received the undersigned hereby promises to pay to George Coffing Warner or order $20,000.00 /100 with interest at the rate of —% per annum." The failure to fill in these blanks is immaterial because a note which promises to pay without a specific date being stated is payable on demand; and where it is payable with interest and no rate specified the legal rate of interest applies. Further down in the note there was a blank space for the collateral security. This was not filled in until the note was negotiated, when the words " Ranger Royalties, Inc., 333 shares preferred and 666 shares common " were written in. The explanation of this peculiar form of note is found in the fact that Warner, Stilger, the then president of the Chelsea Bank, and a man by the name of Warren were an organization committee formed for the purpose of buying a controlling interest in several oil corporations, which subsequently resulted in the incorporation of Ranger Royalties, Inc. Money had been loaned by the plaintiff to the different members of this committee and *ad interim* certificates of stock had been issued, some of which were pledged as security for such loans. Warner had borrowed from the Chelsea Bank $20,000 and gave a demand note with *ad interim* certificates as collateral security largely exceeding the amount that was subsequently pledged as security for the Roulstone note. Roulstone in the meantime had been employed as attorney for this committee and was engaged in incorporating the company. Warner asked Roulstone to let him have a note for $20,000, as it was necessary for him to rearrange his collateral.

Roulstone consented, and thereupon the note in suit was executed and delivered by Roulstone to Warner, who thereupon took it to the Chelsea Bank, and substituted it for Warner's $20,000 note and certain *ad interim* certificates of Warner's were thereby released. An agreement in writing was given to Roulstone the next day after this note was discounted with the bank, which was not received in evidence but marked Exhibit D for identification.

The defendant Roulstone claims that the bank was not a holder in due course, and that the defenses that he would have against Warner could be availed of against the bank, and, therefore, it was error to exclude the testimony of what occurred between Warner and Roulstone, showing:

*First.* That the note was a mere accommodation note; Warner gave no consideration for it.   This was shown, but it did not appear that the bank had any notice of it; in fact, Stilger testified that Warner told him he had made a deal with Roulstone, and he, Stilger, supposed from that statement that Warner had sold stock to Roulstone, as he knew Warner had been negotiating with Roulstone to sell him stock in this enterprise.

If the bank, however, had knowledge that the note was an accommodation note, if it gave value for it, the note could be enforced against Roulstone.   The bank surrendered Warner's note and a portion of the collateral.   It, therefore, became a holder for value.   (Neg. Inst. Law, §§ 51, 52.)   An accommodation maker who has signed the instrument, without value received and for the purpose of lending his name to some other person, is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation maker.   (Neg. Inst. Law, § 55.)

*Second.* That although the bank may be a holder for value, it was not a holder in due course, for the reason that the note was not complete on its face when it was negotiated.   (Neg. Inst. Law, § 91.) We have adverted to the first two blanks and shown that those were immaterial.   It becomes necessary to consider the blank as to the collateral.

The testimony of Roulstone was that Warner wanted the note to rearrange his collateral.   Roulstone, although making a collateral security note, delivered no collateral to be pledged with it.   Therefore, it is clear that he expected an arrangement to be made by Warner for this note to be accepted with Warner's collateral.   The blank was, therefore, left to be filled in when the arrangement was made as to the collateral, and the rule is that when an instrument is delivered to a person with blanks, it is to be presumed that the person to whom it was delivered had authority to fill in the blank,

and it would appear that the blank space was filled in in accordance with the authority given to the payee. (Neg. Inst. Law, § 33.) This blank did not affect Roulstone's obligation. He delivered a note whereby he obligated himself to pay to Warner or order $20,000 on demand.

*Third.* That there was a defect in title; that the note was delivered to the payee with the understanding that Roulstone was not to be called upon to pay the note in any event and Warner agreed to redeliver the note to Roulstone on ten days' demand, and that the negotiation of the note was a breach of faith. The note, however, was not given to Warner with the understanding that it should not be negotiated. It was to be used to rearrange Warner's collateral. It was supposed that it would be a temporary use, for Warner agreed to return it ten days after demand. It was, therefore, presupposed that Warner might need some time in which to repossess himself of the note. This, therefore, was not an agreement on Warner's part that he would not negotiate the note, but that Warner, if Roulstone demanded it, would take up the note and return it, and Warner gave security to Roulstone that he would perform this agreement.

The defendant contends that he was not allowed to show all the facts of the dealings between Warner and himself, nor the facts which would bring notice to the bank. In this contention he is not correct. The court allowed defendant's counsel great latitude at first in going into the affairs of the organization committee, the loans by the bank to such committee and prospective stockholders, etc. But finally the court said: "I am of the opinion that the only testimony that I will admit will be the testimony going to the question of the good faith of the plaintiff in the acceptance of this note of the defendant. I will limit the examination to that alone. I will not permit any testimony as to the conduct of the plaintiff through its officers with any other party or on any other loans. I shall limit the whole question to the good faith of the plaintiff in taking this note of the defendant in place of the note that the bank held at the time. I do that under the decision in 123 N. Y.* Mr. Tuttle: I presume, your Honor, I should except to that. The Court: You know you need not except; you can except when the question is raised. I simply give this as an intimation to you. Mr. Tuttle: Yes, and also I suppose your Honor does not foreclose anything that reflects on credibility. The Court: No, anything that goes to credibility undoubtedly is admissible."

It is sufficient to dispose of this contention that the defense that this note was diverted or negotiated in fraud or bad faith

* See *Canajoharie Nat. Bank* v. *Diefendorf* (123 N. Y. 191).— [REP.

was not pleaded. The sole defense on this behalf was that Warner had agreed to return the note within ten days after demand, and that the note was used to advance the interest of the committee and not to allow Warner to rearrange his collateral, all of which the defendant failed to prove, and the plaintiff's evidence established the facts to be to the contrary thereof. Exhibit D, for identification, which was excluded, shows that Warner had the right to use the note as he did.

The defendant claims the note was not negotiable. This note satisfies the requirements of section 20 of the Negotiable Instruments Law. It is in writing and signed by the maker. It contains an unconditional promise to pay a sum certain in money. It was payable on demand. (Neg. Inst. Law, § 26: "An instrument is payable on demand: * * * 2. In which no time for payment is expressed." *Keister* v. *Wade*, 191 App. Div. 870, 873.) It was payable to order. Nor did it contain an order or promise to do any act in addition to the payment of money. There are conditions in relation to the collateral, and that the collateral was to be subject to a banker's lien for other indebtedness. Roulstone cannot complain of these provisions, even if they did transgress the law as to negotiability which I am of opinion they do not. The collateral was not his. He could satisfy every demand that could be made upon him by paying $20,000 which he had agreed to pay. He had no right to the collateral. It was put up by Warner to secure the bank. Roulstone was given other collateral to secure Warner's promise to him.

The argument that the note, by reason of the insolvency of the maker, might become payable without demand, and hence the date of payment was accelerated, is rather absurd. We have held that the acceleration of the date of payment by reason of the failure to pay any interest coupon did not affect the negotiability of a bond. (*Higgins* v. *Hocking Valley R. Co.*, 188 App. Div. 684.) The acceleration of payment by reason of insolvency is but giving by contract in relation to a negotiable instrument what the law would imply in an executory contract for the sale of goods. (*Pardee* v. *Kanady*, 100 N. Y. 121, 126, 127.) A demand note is due immediately and the Statute of Limitations begins to run from its date. Therefore, its due date cannot be accelerated.

I am of opinion that Warner was authorized to negotiate the note as he did, and that the bank became a *bona fide* holder in due course and was entitled to enforce the note against Roulstone.

The judgment should, therefore, be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, SMITH and GREENBAUM, JJ., concur.

Judgment affirmed, with costs.