**George A. UNSINN and Margaret Unsinn, Appellants**

**v.**

**Leslie R. WILSON and Mary K. Wilson, Appellees.**

**No. 15615.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 11, 1960.

Decided Nov. 17, 1960.

Mr. Cornelius H. Doherty, Washington, D. C., for appellants.

Mr. Stanley H. Kamerow, Washington, D. C., with whom Mr. Allan L. Kamerow, Washington, D. C., was on the brief, for appellees.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

■ The complaint in this action entitled "Complaint To Reform Promissory Note" was dismissed by the District Court and judgment was entered for the appellees. We are satisfied, however, that the appellants had actually stated a claim for declaratory judgment. The issues treated in the record and the evidence adduced by the respective parties demonstrate that the action should have been dismissed without prejudice to its renewal at the proper time. However since the various instruments are before us and are subject to construction as matter of law, in the interest of possibly indicating a basis upon which to put an end to the litigation, we will consider the case.

Appellees, husband and wife, hereinafter referred to as "the Wilsons," on December 8, 1955, signed a contract to purchase property owned by 801 Irving Street Incorporated at a price of $182,-500.00. The buyers agreed to pay $40,-000.00 in cash, and to assume "trust or trusts not to exceed $142,500.00 payable $950.00 per month, including interest at 5% with privilege of paying off at any time." When at the time of settlement it developed that the property was already subject to a first trust on which the balance was $69,020.38, the Wilsons on December 30, 1955, executed and delivered to the corporate seller as payee, or order, their note for $73,479.62 with interest at 5%, secured by a second trust.

The first trust note called for payments of $800.00 per month, including principal and interest. The Wilsons accordingly in the second trust note agreed to pay $150.00 per month "to be applied, first, on the payment of interest on the amount of principal remaining unpaid." Thus the $800.00 payment and the $150.00 payment made up the $950.00 per month which the contract called for.

Interest on the second trust note annually comes to $3,673.98. Our examination of the note discloses that the Unsinns have regularly been crediting the monthly payments of $150.00. Obviously the total indebtedness secured by the second trust is mounting each year at the rate of $1,873.98, so that the debt has now become nearly $80,000.00.

In April, 1956, the appellants, husband and wife, hereinafter "the Unsinns," had commenced suit [1] against the corporate payee, 801 Irving Street Incorporated and certain stockholders. In settlement of that action, the Wilsons' note held by the corporation was endorsed, without recourse, to the Unsinns. The latter in 1958 commenced this action seeking to recover the accrued unpaid interest.[2] They also asked for a judgment (a) that the annual interest deficit be subjected to a 5% interest charge and (b) after the first trust note shall have been paid in

---

[1.] Unsinn then alleged that in 1954 he had been sole owner of the property here involved. He had in 1954 conveyed the premises to a corporation formed for the purpose of taking title and of operating the business therein conducted. He alleged that as part consideration he was to receive during his lifetime $125.00 per week from the business and that such payments had been made up to January 1, 1956. Additional allegations as to terms and their alleged breach predicated his claim to damages, rescission of the conveyance and other relief. The Wilsons were not involved in that 1954 transaction.

[2.] The money claim was abandoned at trial.

full, that the Wilsons be required to pay the entire sum of $950.00 "payable each month in accordance with the contract of December 8, 1955 * * * on the note now owned by the plaintiffs * * * until the full amount of principal and interest is paid in full."

The trial judge in his oral decision set forth his findings of fact and conclusions of law. He stated in part:

"There is no doubt that the note does not conform to the contract, because the contract, although perhaps not artistically drawn, contemplated the payment of $950. per month continuously, whereas in the form that the transaction took when the settlement was made, the payments on the trust would, in effect, be reduced from $950.00 to $150.00 per month as soon as the first trust shall have been paid off. The fact, however, that the note as executed does not conform to the contract is not sufficient to justify a reformation. It must be established that there was a mistake in the execution of the note in order to justify its reformation so that it would correspond to the original contract." [3]

The trial judge further observed that the note "on its face, appears somewhat incongruous or unusual, because the payment of $150.00 per month is not sufficient to pay the entire interest on the note, not to speak of any part of the principal." This result, he continued, reflected no mistake but rather an understanding of the parties and that "the intention was that [the unpaid interest and principal] should remain as an en-

cumbrance on the property, with the implication that the makers, in order to clear their title, at some future time would pay off the note at a substantial discount and on favorable terms."

The trial judge correctly concluded that the *contract* of sale contemplated with respect to the "trust or trusts not to exceed $142,500.00," assumed by the buyers, that the Wilsons were obligated to pay $950.00 per month, principal and interest, "continuously." The note which the Wilsons signed and delivered purports to call for payments of interest only, and at the rate of $150.00 per month. But the trial judge erred in concluding that "the payments on the trust would, in effect, be reduced from $950.00 to $150.00 per month as soon as the first trust shall have been paid off."

■ The error arises from the failure to recognize that the second trust note is a demand note. The statute is clear on this point. D.C.Code § 28–108 (1951), in pertinent part, specifically provides:

"An instrument is payable on demand—

"First * * *.

"Second. *In which no time for payment is expressed.*" (Emphasis added.) [4]

■ It may be discerned from this record that neither the original payee nor the makers realized or recognized that a demand note had been uttered. We may assume that any such result was not in accord with what the original parties contemplated, but we must look to the instrument at hand, and the law is clear, this is a demand note.[5]

3. We think there definitely was error "in the execution of the note" to which we will presently turn.

4. See also Winsted Savings Bank v. Town of New Hartford, 1905, 78 Conn. 319, 322, 323, 62 A. 81, 82; Chelsea Exch. Bank v. Warner, 1922, 202 App.Div. 499, 195 N.Y.S. 419; Keister v. Wade, 1920, 191 App.Div. 870, 182 N.Y.S. 119; Britton, Bills and Notes 87, 88 (1943).

5. No presentment was hitherto made, undoubtedly because both the original payee and the present owners of the note treated the instrument as one calling only for payments of interest at the rate of $150.-00 per month. We may suppose that the note in the hands of a holder in due course might still be presented pursuant to D.C.Code § 28–602 (1951); otherwise the statute would have commenced to run from its date. Kenyon v. Youngman, 1930, 59 App.D.C. 300, 301, 40 F. 2d 812, 813.

The reasons underlying the effort of the Wilsons to keep fluid the terms of payment on the second trust note are understandable and abundantly manifested of record. When the Wilsons bought the property, there were two outstanding leases. One, with a monthly rental of $400.00 will expire July 14, 1964. The other, with a monthly rental of $1,142.00, will expire August 1, 1965. With the expiration of the first trust in 1964, the Wilsons could not know "what our circumstances will be, whether the place remains rented or whether the bank will refinance the loan to begin with, in which case we may be able to get a discount on that second trust note to pay cash." They prudently bargained for total payments of $950.00 per month, which were well within the foreseeable income. They wanted the second trust note written as we have seen "because we would renegotiate the note when the first trust was paid off and we knew what income we would be receiving from the property." But they signed a demand note which now is owned by the Unsinns.

It has been "convincingly" established that the legal effect of the note is vitally different from what the original parties intended.[6]

■ In the context described, the problem has not been considered by the District Court. While rescission has been permitted in certain situations, any such result here would more likely work hardship than good. While reformation has been ordered in yet other cases,[7] the courts may act only when the amended terms will carry out the earlier true, but incorrectly or imperfectly stated agreement. Obviously the court cannot make a new contract for the parties, and neither the Wilsons nor the court can now know what circumstances will develop in 1965.

It may be, in view of our opinion, that a stipulation can be entered into, to be incorporated in a judgment, to determine the status of the parties to the present action insofar as is possible in the light of certain essentials which have been found by the trial court and others which are clearly determinable from the instruments before us, viz.:

The Wilsons in the purchase contract bound themselves to make payments of $142,500.00. They have faithfully, each month, paid the bank $800.00, principal and interest, on the first trust note. They have likewise maintained the monthly interest payments of $150.00 on the second trust note. They are not liable for money damages as to arrears of interest. They are not obligated to pay interest on the unpaid interest over and above the $1,800.00 hitherto annually and now being paid. They are not to be subjected to demand for payment of the debt secured by the second trust before the second lease expires in 1965. After that date, the first trust note having been amortized, they are to be free to negotiate the terms of payment on the second trust note in the light of all circumstances then prevailing, but shall not be *bound* to make payments in amounts greater than $950.00 per month, including principal and interest at 5%.

After all, while the Wilsons signed the note which gave rise to the problem, they have otherwise been guilty of no conduct giving rise to a claim of inequity. The Unsinns have no present complaint for they took the note as worded and in addition, the value of their security is enhanced with each first trust payment.

We will suspend entry of our judgment for thirty days unless earlier, the parties to this action shall advise the Clerk of this Court in writing that they have stipulated for judgment as intimated. If no such agreement shall be suggested on the record, a new trial will be ordered.

In the latter event, the parties shall be free to amend their pleadings to the end that all aspects of the case be considered in view of the fact that the note

---

6. 3 Corbin, Contracts §§ 614–616 (1951); 5 Williston, Contracts §§ 1585–1587 (1937).

7. Cf. Hawkins v. Fradkin, 1949, 85 U.S. App.D.C. 310, 313 note 1, 178 F.2d 705, 708 note 1.

before us is a demand note which may or may not be subject to various defenses.

Meanwhile we direct that the note be deposited with the Clerk of this Court to abide our further order. The parties shall bear their own respective costs.

Reversed.

#### Addendum by the Court

Agreeably to the opportunity afforded by the court, *supra*, the parties entered into and filed a stipulation the terms of which have been incorporated in the court's judgment.