**Mark WATSON, Charles W. Watson and Norma L. Watson, Plaintiffs-Appellees,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland corporation, Defendant-Appellant.**

**No. 25135.**

United States Court of Appeals, Ninth Circuit.

June 4, 1970.

Leslie T. Bennett (argued) of Bennett, Ornelles & Carroll, Honolulu, Hawaii, for defendant-appellant.

Charles B. Dwight, III (argued) of Ashford & Wriston, Honolulu, Hawaii, for plaintiffs-appellees.

Before JERTBERG, BROWING, and HUFSTEDLER, Circuit Judges.

## PER CURIAM:

Plaintiffs, citizens of Hawaii, brought this diversity action seeking a declaratory judgment reforming an insurance policy issued by defendant, a Maryland corporation. The district court granted the relief sought. We reverse.

Plaintiff Charles and Norma Watson asked the Dillingham Company, Ltd., a Hawaiian insurance agency, to write an automobile insurance policy covering use by their minor son Mark (also a plaintiff) of a 1965 Volkswagen automobile owned by his mother. Dillingham concluded that, because Mark had been involved in several accidents, insurance could be obtained only through the Hawaii Automobile Assigned Risk Plan [Plan], under which high-risk applicants are randomly assigned to insurance companies licensed to do business in the state.

Mark went to Dillingham's offices to apply for the Plan, partially filled out an application form, and signed the form and a blank duplicate. A Dillingham employee completed the form. As completed, it expressly requested issuance of a "non-owner policy." However, certain responses to questions in the application indicated that coverage was desired for a particular private passenger automobile regularly used by Mark, and that Mark was a seventeen-year-old living with his parents.

The completed application was sent to the Plan's office. Defendant notified Mark that it had been assigned his application and enclosed a 30-day binder which described the policy as a "Non-Owner Policy." Plaintiffs paid the balance due on the premium and defendant mailed the policy to Mark. The policy included an endorsement entitled "NON-OWNER POLICY" which provided that the policy did not apply "to any automobile owned by the Named Insured or a member of the same household * * *."

Mark was involved in an accident while driving his mother's automobile. Defendant denied coverage because the policy excluded Mark's use of his mother's car. Plaintiffs then commenced this action.

The district court entered judgment for plaintiffs ordering the insurance policy "reformed so that * * * coverage provided be extended to cover Mark Watson's driving of the 1965 Volkswagen automobile owned by his parent, Norma L. Watson."

The court based reformation upon these grounds:

1. The responses in the application, noted above, created an ambiguity which should have put defendant on notice of the probability of error, and caused it to inquire further as to the type of policy desired.

2. Defendant issued the policy and collected the premiums without seeking to resolve the ambiguity appearing in the face of the application, and therefore was "estopped from refusing to insure Mark in the manner in which the Plaintiffs reasonably understood and assumed that he had been insured."

3. Dillingham was the "agent pro tanto" of defendant, and defendant was bound by its actions.

4. Even if Dillingham was not defendant's agent, defendant "ratified and adopted the actions of Dillingham, the producer of record, and consequently [was] bound by them. * * * "

■ The first two grounds do not justify the only relief sought or granted here—reformation. Both grounds assume defendant lacked actual knowledge of the kind of policy plaintiffs desired, or at least treat defendant's actual knowledge as irrelevant. But "reformation is not a proper remedy for the enforcement of terms to which the defendant never assented; it is a remedy the purpose of which is to make a mistaken writing conform to antecedent expressions on which the parties agreed." 3 Corbin, Contracts § 614, at 723 (1960 ed.) *See also* Continental Insurance Co. of New York v. Cotten, 427 F.2d 48 (9th Cir. 1970); Unsinn v. Wilson, 109 U.S. App.D.C. 193, 285 F.2d 273, 276 (1960); Stevens v. Illinois Central R.R., 234 F.2d 562 (5th Cir. 1956); McConnell v. Pickering Lumber Corp., 217 F.2d 44, 49 (9th Cir. 1954); Restatement of Contracts § 504, comment b (1932). Defendant's failure to inquire as to plaintiffs' intention might support rescission, but it does not justify reading into the contract a new term to which defendant did not assent.

■ The second ground is insufficient for another reason. To justify application of the doctrine of equitable estoppel, "[t]here must be conduct—acts, language or silence amounting to a representation or concealment of material facts." 3 Pomeroy, Equity Jurisprudence § 805, at 191 (5th ed. 1941). *See also* 16A Appleman, Insurance Law & Practice § 9088 (1968 ed.). Defendant did not misrepresent the nature of the coverage under the policy. On the contrary, the policy clearly stated that coverage was limited to cars not owned by a member of the family. Plaintiffs were ignorant of the true nature of the policy only because none of them read it. "The doctrine of equitable estoppel does not erase the duty of due care and is not available for the protection of one who has suffered loss solely by reason of his own failure to act or inquire." Hampton v. Paramount Pictures Corp., 279 F.2d 100, 104 (9th Cir. 1960).

■ The third and fourth grounds are not predicated upon any claim that an agency relationship existed by virtue of an agreement between defendant and Dillingham. Rather, the third ground rests on the theory that Dillingham was defendant's agent as a matter of law by virtue of the Plan; and the fourth ground on the proposition that an agency is to be implied from defendant's ratification and adoption of Dillingham's acts.

But the application form under the Plan expressly provides that the insurance agent processing an assigned risk application is *not* the agent of the insurance company to which the application is assigned;* and we find nothing in the terms of the Plan, in the statutes of Hawaii, or in general agency law, to support a result contrary to this proviso. *Cf.* Yoshida v. Liberty Mutual Insurance Co., 240 F.2d 824, 828 (9th Cir. 1957) (California Assigned Risk Plan); Iowa National Mutual Insurance Co. v. Richards, 229 F.2d 210, 212 (7th Cir. 1956) (Iowa Assigned Risk Plan).

■ As to the fourth ground, we find nothing in the record which indicates that Dillingham either purported or assumed to act as defendant's agent, or that defendant intended to ratify or adopt Dillingham's acts.

Reversed.

---

* "I hereby designate as producer of record for this insurance ...... * * * I understand the designated producer of record is *not acting as an agent* of any company for the purpose of this insurance and has no authority to bind such insurance" (emphasis added).