Claire M. ISAAC, Appellant,

v.

The FIRST NATIONAL BANK OF MARYLAND, D.C., Appellee.

No. 92–CV–1551.

District of Columbia Court of Appeals.

Argued April 18, 1994.

Decided Sept. 22, 1994.

---

William V. DePaulo, Washington, DC, for appellant.

James T. Heidelbach, Baltimore, MD, for appellee.

Before STEADMAN, SCHWELB and KING, Associate Judges.

STEADMAN, Associate Judge:

This case involves the enforceability of a provision in a bank certificate of deposit agreement in joint tenancy form under which the bank set off half the moneys in the account against an obligation owed to the bank by a joint tenant who had no actual beneficial interest in the account. The trial court granted summary judgment in favor of the bank. We affirm.

### A.

We apply the oft-repeated and familiar criteria for review of grants of summary judgment. The movant, here the bank, must demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Colbert v. Georgetown University*, 641 A.2d 469, 472 (D.C. 1994) (en banc). The record is viewed in the light most favorable to the party opposing the motion. *Id.* The facts, so viewed, may be summarized as follows.

Appellant established a joint tenancy certificate of deposit account with her son at appellee bank, but all parties, including the bank, knew that all the funds in the account belonged to and were the property of appellant, at least at the inception of the account.[1] The certificate of deposit agreement signed by both joint tenants contained a provision

---

**1.** This fact is nowhere squarely alleged by appellant, but we shall assume it for purposes of this opinion. The occasion for the opening of the account was a somewhat complicated transaction whereby the bank established a revolving line of credit for appellant to provide her with a steady income stream. The funds in the joint tenancy account were pledged as security for the revolving line of credit. Appellant asserted in the opposition to the bank's motion that her reason for a joint tenancy account was to permit her son to assist in the day-to-day mechanics of the administration of the account if she should become disabled.

which, in relevant part as quoted by appellant in her brief,[2] dealt with the bank's right of set-off:

> SET–OFF: Each of you[3] who has the right to withdraw from this account agrees that we may set-off any debt you owe us now or later against the amount of money you could withdraw from this account. For example, if any one of three of you can withdraw all the money from this account, the debt of any one of you can be set-off against the balance in this account (even though the others are not obligated on the debt). We may exercise this right of set-off, without notice to you, any time your debt is in default.

Some time thereafter, the bank made a loan to the son, and when the son defaulted on the loan, the bank set off half the funds in the joint account against the debt of the son to the bank. Appellant thereupon brought the instant suit against appellee bank in a complaint which set forth three separate counts: breach of contract, replevin, and intentional infliction of emotional distress.[4]

▆▆▆ Appellant does not in the main challenge the proposition that the language of the certificate of deposit agreement as written permitted the bank to exercise the right of set-off.[5] Rather, she principally argues that 1) the certificate of deposit did not correctly set forth the intent of the parties; and 2) in any event, the provision allowing set-off is, on the facts of this case, unconscionable and should not be enforced.[6]

**B.**

▆▆▆ The relationship between a bank and a depositor is a contractual relationship that is governed by the written agreement between the parties. *See Watts v. American Sec. & Trust Co.,* 47 A.2d 100, 101 (D.C. 1946); *Gibson v. Industrial Bank of Wash-*

2. The provision also contains a second paragraph dealing with *situations where the bank would not exercise its right of set-off.* Appellant did not argue to the trial court nor in its brief to us that any of these exclusions applied, and we therefore do not consider that possibility. *See Miller v. Avirom,* 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967); *George Washington Univ. v. Waas,* —— A.2d —— n. 6 (D.C. September 19, 1994) (issues raised for first time at oral argument will not be considered on appeal).

3. "You" is defined as the depositors.

4. The relief prayed for was $30,304 (the amount of the set-off) in damages on the first two counts, and an unspecified amount of damages (to be proven at trial) on the tort claim. Appellant also sought punitive damages of $30,304,000, attorney's fees and costs.

5. The only ambiguity that appellant suggests is that the phrase "now or later" in the first sentence of the quoted provision could refer to the time of set-off rather than the date of any debt. This argument must fail, in light of the placement of the phrase within the sentence and the operational meaninglessness of an *immediate exercise* of set-off. The general rule of set-off is not limited to debts existing at the time of the establishment of the account against which the right of set-off is exercised. 5A MICHIE ON BANKS & BANKING § 114 (1994) and cases cited therein · (general rule is that bank may exercise right of set-off against any indebtedness if such indebtedness is certain, definite, and liquidated, or capable of liquidation by calculation). Thus here the principles relating to the use of extrinsic evidence to interpret ambiguous written contracts are not in issue. *See, e.g., Dodek v. CF 16 Corp.,* 537 A.2d 1086 (D.C.1988).

6. We find no merit in appellant's argument that the bank could not exercise any right of set-off after appellant delivered a letter to the bank on September 30 attempting to change the ownership of the account to a joint tenancy with her two grandchildren instead of her son. The certificate by its own terms did not mature for another three months, and rights in the certificate could not be transferred nor funds withdrawn before maturity, without the bank's consent. Appellant claims that the Bank's change in the calculation of its interest on the certificate on a quarterly basis was a de facto change in the terms of the certificate, causing it to mature on a quarterly basis. We do not think that any variance in the interest spread between the loan and the certificate could fairly be construed as an implicit automatic premature maturation of the latter.

Also of no avail is appellant's argument that the bank could not exercise any right of set-off because the son's loan was not specifically secured by the certificate of deposit. The language in the set-off provision is sweeping, in accordance with the general principle that a bank's right of set-off is in addition to any other security that a bank may or may not have for a loan in default. 5A MICHIE ON BANKS & BANKING, *supra,* at § 119(c) (bank has right of set-off even if it has failed to exhaust its primary collateral security because creditor should be able to pursue any one of a number of remedies against a debtor until the debt is satisfied).

*ington,* 36 A.2d 62, 63 (D.C.1944). We recapitulated in *Howard Univ. v. Best,* 484 A.2d 958, 967 (D.C.1984) the controlling principles relevant here in dealing with a written instrument challenged by a party thereto:

> This court adheres to the 'objective law' of contracts, whereby the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress or mutual mistake. *Minmar Builders, Inc. v. Beltway Excavators, Inc.,* 246 A.2d 784, 786 (D.C.1968) (quoting *Slice v. Carozza Properties,* 215 Md. 357, 368, 137 A.2d 687, 693 (1958)).

*See also Reliable Constr. & Realty Co. v. Waterproofing Serv., Inc.,* 34 A.2d 124, 126 (D.C.1943) ("It will not do for a man [or woman] to enter into a contract, and, when called upon to respond to its obligations, to say that he [or she] did not read it when he [or she] signed it, or did not know what it contained") (quoting *Upton v. Tribilcock,* 91 U.S. 45, 50, 23 L.Ed. 203 (1875)). This same principle underlies the well-established parol evidence rule, generally barring introduction of an alleged understanding in variance, addition, or contradiction to the written terms.

7. The concept of meeting of the minds may make sense in whether there was a formation of any agreement where negotiations went back and forth. *See* JOHN EDWARD MURRAY JR., MURRAY ON CONTRACTS § 30, at 53–56 (3d ed. 1990). It is not particularly useful, however, when dealing with a written agreement that clearly was executed by the party sought to be charged.

8. Mutual mistake in this sense generally refers to both parties believing an extrinsic fact to be true which in fact is erroneous. *See Bituminous Coal Operators' Ass'n Inc. v. Connors,* 276 U.S.App. D.C. 9, 19, 867 F.2d 625, 635 (1989) ("a contract may be rescinded if the contracting parties entertained a material mistake of fact that went to the heart of their bargain"); *Shear v. National Rifle Ass'n of Amer.,* 196 U.S.App.D.C. 344, 353, 606 F.2d 1251, 1260 (1979) ("where both parties assume a certain state of facts to exist, and contract on the faith of that assumption, they can be relieved from their obligation if the assumption is erroneous") (quoting *Leasco Corp. v. Taussig,* 473 F.2d 777, 781 (2d Cir.1972)). *See generally* E. ALLAN FARNSWORTH, 2 FARNSWORTH ON CON-

*See Stamenich v. Markovic,* 462 A.2d 452, 455 (D.C.1983).

■ Thus, it will not suffice simply to assert that the parties' "intent" is not reflected in the set-off provision or that there was no "meeting of the minds" on that issue.[7] Nor does her argument, obviously correct as a general principle, that transactions in multiple parts, as here, *see supra* note 1, must be reviewed as a whole and considered in all their parts, advance her case because the language here is free of ambiguity and in any event, nothing in the multi-part transaction sheds any particular light on the creation or interpretation of the joint tenancy aspect of the transaction other than perhaps to support her postulated assertion that sole beneficial ownership remained in her alone. Nothing in the nature of the overall arrangement required that the certificate of deposit be in joint tenancy form. *See supra* note 1.

■ As *Howard Univ. v. Best, supra,* makes clear, a party faced with a clear written agreement must allege and prove fraud, duress, or mutual mistake[8] to negate the disputed provision. 484 A.2d at 967. We perceive nothing in the complaint or related documents that asserts such theories or sets forth sufficient facts or allegations in support thereof.[9] *See Hercules & Co. v. Shama Restaurant Corp.,* 613 A.2d 916, 923 (D.C.1992) (fraud is never presumed but must be proven

TRACTS § 9.3, at 508 (1990) ("A mutual mistake occurs when both parties are under substantially the same erroneous belief as to the facts").

9. There are circumstances where mutual mistake, fraud and duress go to the formation of a contract by reason of which the contract is considered voidable by one or more of the parties. MURRAY, *supra* note 7, at § 17, at 31–32; *see also* JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS § 1–11, at 18–19 (3d ed. 1987). This is contrasted with the situation where an agreement has been reached by the parties but the writing does not accurately express the mutual agreement of the parties, and reformation is appropriate. *See infra* note 10.

Appellant does not claim that no contract at all was formed because of a lack of "meeting of the minds" but rather that the written contract does not accurately express the intent of the parties because there is an inclusion of a term (the set-off provision) upon which the parties did not agree. *See* FARNSWORTH, *supra,* note 8, at § 7.5; *see infra* note 10.

by clear and convincing evidence); 13 WILLISTON ON CONTRACTS § 1627 at 811 (3d ed. 1970) (burden of proof of duress is on party seeking to set aside transaction and the evidence must be clear and convincing); *Randolph v. Ottenstein,* 238 F.Supp. 1011, 1014 (D.D.C.1965) (mutual mistake may not be lightly inferred and must be established by evidence). Nor is there any specific plea or indeed sufficient basis in the allegations for equitable reformation of the contract, whereby a contract may be amended to express the true *mutual* intent of the parties, but where the party seeking reformation generally must prove the mistake by "clear and convincing evidence." [10] FARNSWORTH, *supra* note 8, at § 7.5, at 719; *see also* MURRAY, *supra* note 7, at § 91(E), at 449; *Wurtzel v. Richmond,* 717 F.Supp. 1, 3 (D.D.C.1989) (party seeking reformation must demonstrate that the deed was erroneous by clear and convincing evidence). Nothing in the allegations gives any foundation for a determination by clear and convincing evidence that the bank did not fully intend that the set-off language be exactly as provided in the written agreement. A finding of fraud, duress, or mutual mistake, whether to avoid or reform a written agreement, obviously must reflect strictness in interpretation and a high level of proof; otherwise, the parol evidence rule will be swallowed up in the exceptions.

### C.

Alternatively, appellant invokes, in substance, the doctrine of unconscionability, as set forth in the leading case of *Williams v. Walker–Thomas Furniture Co.,* 121 U.S.App. D.C. 315, 319, 350 F.2d 445, 449 (1965) (footnote omitted), in which the court held:

Accordingly, we hold that where an element of unconscionability is present at the time a contract is made, the contract should not be enforced.

Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction.

*See also* D.C.Code § 28:2–302 (1991).

A bank's right of set-off is a concept of ancient recognition in the common law, quite independent of contractual agreement. *Baltimore & Assocs. v. Municipal Escrow and Title Co.,* 625 F.Supp. 1271, 1272 (D.D.C. 1985) (well-established that bank may set-off customer's debts owed to the bank because of other transactions); BARKLEY CLARK, THE LAW OF BANK DEPOSITS, COLLECTIONS AND CREDIT CARDS, § 14.01 (3d ed. 1993); 10 AM. JUR.2D *Banks* § 666 (1963); Gary D. Spivey, J.D., Annotation, *Bank's Right of Set-off, Based on Debt of One Depositor, Against Funds in Account Standing in Names of Debtor and Another,* 68 A.L.R.3d 192 (1976). With respect to joint tenancy accounts, however, because of the conceptual nature of joint tenancy ownership, that right was limited at common law to debts owed by both joint tenants. Hence, the right of a bank to exercise a right of off-set to satisfy the obligation of only one joint tenant was contractually created by appropriate provision in the agreement establishing the account, and has been given widespread judicial recognition and enforcement.[11] *See, e.g., Selby v. Du-*

10. Reformation is available where there is an error in reducing the agreement of the parties to a writing. FARNSWORTH, *supra* note 8, at § 7.5, at 219; *Cafritz v. Cafritz,* 347 A.2d 267, 269 (D.C. 1975) ("Reformation is appropriate where a mistake is made in the drafting of an instrument so that the written agreement fails to express the true agreement between the parties); *Vakas v. Manuel,* 114 U.S.App.D.C. 368, 369, 316 F.2d 369, 370 (1963) ("when reformation is sought, the purpose of which is to make a mistaken writing conform to antecedent expressions on which the parties agreed") (footnote omitted); *Unsinn v. Wilson,* 109 U.S.App.D.C. 193, 196, 285 F.2d 273, 276 (1960) (with reformation,

"courts may act only when the amended terms will carry out the earlier true, but incorrectly or imperfectly stated agreement"); *Northwest Pipeline Corp. v. Helms,* 583 F.Supp. 37, 39 (D.D.C. 1983). Reformation is thus designed to remedy a mistake as to expression, where there is a scrivener's error in the writing or a mistake as to the legal effect of the language. FARNSWORTH, *supra* note 8, at § 7.5, at 219.

11. Appellant's citation to cases barring the right of set-off where the bank improperly exercised its right of set-off against funds held in trust, where the beneficial ownership was in a person other

*Quoin State Bank,* 223 Ill.App.3d 104, 165 Ill.Dec. 621, 584 N.E.2d 1055 (1991); *Uttecht v. Norwest Bank of Norfolk, N.A.,* 221 Neb. 222, 376 N.W.2d 11 (1985); *Chickerneo v. Society Nat'l Bank of Cleveland,* 58 Ohio St.2d 315, 390 N.E.2d 1183 (1979). *See also* CLARK, *supra,* at § 14.06[4].

▉ Moreover, there is nothing strange in the concept of one person subjecting his or her property to liability for the debt of another. Such is the very nature of a guaranty or surety, a common enough transaction. Therefore, it is not enough to simply show that the bank knew that beneficial ownership of the account was in appellant. By putting her property in her and her son's name, even if only for convenience, *see Estate of Presgrave v. Stephens,* 529 A.2d 274, 280 (D.C. 1977) ("where a party opens a joint account for himself [or herself] and another without consideration, the account is presumed open for the convenience of that party") (quoting *Davis v. Altmann,* 492 A.2d 884, 885 (D.C. 1985) (alteration in original)), and particularly by giving her son the power on his signature alone to withdraw some or all of the moneys in the account, appellant changed the ostensible form of ownership [12] and could hardly have been surprised by a contractual provision that gave some recognition thereto.[13]

The only extant case law on the issue before us supports the position of the bank. In *Chickerneo v. Society Nat'l Bank of Cleveland, supra,* 58 Ohio St.2d at 315, 390 N.E.2d at 1184, the bank set off the funds in a joint account [14] between appellant and another in satisfaction of a debt owed by the other to the bank. It was stipulated that all the funds in the account were owned by appellant.[15] *Id.* at 317–318, 390 N.E.2d at 1185 n. 2. A rule of the bank, incorporated by operation of law into the joint tenancy agreement, permitted such a set-off. *Id.* The Ohio Supreme Court rejected appellant's argument that the rule violated public policy, stating that it "[would] not interfere with the contract freely entered into by the parties." *Id.* at 320–21, 390 N.E.2d at 1186. In that case, the rule was not set forth in the joint tenancy signature card agreement but simply incorporated by operation of law. *Id.* at 317–21, 390 N.E.2d at 1185–86. In contrast, the agreement in the case before us specifically set forth the provision upon which the bank relies, and is not buried in the agreement but rather constitutes one of only six provisions thereof, appearing on the back side of the signature card. The *Chickerneo* opinion was recently cited with approval and followed in the Illinois case of *Selby v. DuQuoin State Bank, supra,* 165 Ill.Dec. at 624, 584 N.E.2d at 1058.

Likewise, in *Uttecht v. Norwest Bank of Norfolk, supra,* 376 N.W.2d at 13, the Nebraska Supreme Court was dealing with a statute that limited the right of set-off to moneys to which the debtor was "beneficially entitled," but which provided that this limitation was "subject to any contractual provisions." *Id.* The court held that the broad language in the joint tenancy agreement with the bank, similar to that in the case before us, overrode the statutory limitation. *Id.* at 14. "We conclude that absent allegations and proof of fraud, contractual arrangements

than the depositor, are inapposite. Here the beneficial owner, appellant, affirmatively agreed to the right of set-off.

12. Even if the bank knew of the beneficial ownership arrangement at the inception of the account, mother and son could change the arrangements as between themselves without the bank's knowledge. It is not an inconsiderable burden to require a bank to disregard the ostensible form of ownership and instead keep tabs on what it may otherwise know about the "true" nature of the relationship. *See* D.C.Code § 26–201 (1991) (funds in joint account payable to either may be paid out to one party whether or not the other is still living).

13. We take especial note, in assessing unconscionability, that the bank elected to set off only half the funds in the account. Whether the same conclusion would be reached had the entire account balance been applied to the son's debt, we leave for another day.

14. It appears that the bank exercised the right of set-off against the totality of the funds in the account.

15. Although the opinion does not state whether the bank knew this fact, the form of ownership would not entitle the bank to assume that more than half the moneys therein belonged to its debtor, yet the bank took the full amount.

between a bank and its depositors with respect to the bank's right of set-off may supersede statutory provisions." *Id.* In the District, we do not appear to have any statute similar to that in Nebraska, and hence it is even more difficult to discern a "public policy" ground to override the contractual provision.

Appellant relies upon an intermediate appellate case in Ohio, *Rives v. Krupzsield,* 60 Ohio App.3d 97, 573 N.E.2d 1199 (1989). That case involved a woman who, in opening a bank account, asked whether an arrangement could be made whereby her son could withdraw funds from the account for her in the case of an emergency. *Id.* The bank officer responded that this could be done by establishing a joint tenancy account with her son, which was done. *Id.* The bank thereafter set off funds in the account against a debt owed the bank by the son. *Id.,* 60 Ohio App.3d at 97–98, 573 N.E.2d at 1200. In setting aside the set-off, the court distinguished *Chickerneo, supra,* by noting that in that case the depositor had knowingly and voluntarily selected a joint tenancy account, while in the case before the court the depositor had relied upon the bank to achieve her wishes and what she had asked for was not what she received. *Id.,* 60 Ohio App.3d at 97–99, 573 N.E.2d at 1200–01. Although the court in *Rives* talks of the absence of a "meeting of the minds," we think this a perhaps infelicitous phrase for a situation which in fact closely resembled the fraud or misrepresentation that can nullify a contractual provision. The bank simply did not do what the woman requested.

We have no comparable allegation here. No assertion is made that appellant did not voluntarily and knowingly enter into the joint tenancy agreement as written or that she was misled or deceived by the bank in any way. Her very complaint acknowledges that "[appellant] exercised an option" to designate the account as a joint tenancy with her son. In the face of the facts as alleged and existing precedent, the circumstances here simply do not reach a level that a trial court could determine as a matter of law that "the manner of agreement and/or the terms of the

contract are so one-sided as to be unenforceable." *Bennett v. Fun & Fitness of Silver Hill Inc.,* 434 A.2d 476, 480 (D.C.1981); *See Urban Invs. Inc. v. Branham,* 464 A.2d 93, 99–100 & n. 8 (D.C.1983) (the court determines unconscionability as a matter of law; the party seeking to avoid contract for unconscionability must prove two elements: absence of meaningful choice on part of one of the parties, and contract terms which are unreasonably favorable to other party); *Patterson v. Walker–Thomas Furniture Co.,* 277 A.2d 111, 114 (D.C.1971) (court "form[s] a judgment as to the existence of a valid claim of unconscionability"); D.C.Code § 28:2–302 (court as a matter of law finds the contract or any clause of the contract unconscionable).

In sum, we see no basis in the record presented to support a judgment for appellant on the facts and under the theories expounded before the trial court and before us.[16] Accordingly, the judgment appealed from is

*Affirmed.*

---

16. Since the set-off was permissible, appellant's claims of replevin, and intentional infliction of emotional distress and for punitive damages must necessarily fail as well.