981 A.2d 584 (2009)
In re ESTATE OF Mary MUNAWAR.
Mohammad Munawar, Appellant,
v.
Franklin Tibbs, Appellee.
No. 07-PR-588.
District of Columbia Court of Appeals.
Argued October 16, 2008.
Decided September 17, 2009.
*585 Bruce M. Bender, with whom Erica T. Davis, Rockville, MD, was on the brief, for appellant.
Serene D. Charles, Washington, DC, for appellee.
Before KRAMER, BLACKBURNE-RIGSBY and THOMPSON, Associate Judges.
KRAMER, Associate Judge:
Appellant argues that the trial court committed reversible error in reforming a deed to show appellee Lucien Franklin Tibbs ("Franklin") as an owner of a certain multi-unit real estate property with rights of survivorship. We agree.

I. The Facts
In March 1989, the Department of Veterans Affairs ("VA") sold the subject premises to, and received a deed of trust secured by the premises from, Mary L. Brown. The language at the top of the first page of the deed, as provided by the Recorder's office, indicates that the VA sold the deed to "Mary L. Brown, unmarried." At the bottom of the second page of the deed there is what appears to be a cover sheet summarizing the deed and providing mailing information. That section states the following:
 DEED
 EDWARD J DERWINSKI
 Secretary of Veterans Affairs
*586
 TO
 MARY L. BROWN
 FRANKLIN TIBBS
 ...
 When recorded mail to:
 MARY L. BROWN
 FRANKLIN TIBBS
 527 16th Street, NE
 Apt # 1
 Washington, DC 20002
Approximately ten years later, in March 1999, Mary L. Brown married Mohammad Munawar. Mary died intestate on March 7, 2006. Mr. Munawar claims that the property should pass to him through inheritance, while Franklin claims that the property should go to him because the deed should be reformed to reflect the decedent's intention that he co-own the property as a joint tenant with a right of survivorship.
At trial, appellant called himself, Mr. Munawar, as the decedent's husband and her estate's personal representative. Franklin called six witnesses: (1) himself, as the decedent's brother and the claimant in this case, (2) Marion Mitchell, a close friend and distant relative of the decedent; (3) Berton Norville, the decedent's long-time neighbor; (4) Na'imah Omar, the decedent's niece who lived at the subject premises and took care of the decedent before she died; (5) Shirley Parker, a long-time friend of the decedent; and (6) Dorothy Jackson, the decedent's sister. The six witnesses generally testified that the decedent had told them that Franklin was on the deed with her, that Franklin would receive the house if she died, and that she had originally planned to purchase the home with Franklin because she believed she could not qualify for financing on her own, but then discovered she could qualify on her own and attended the closing by herself.
Taking into account the above testimony and finding that the deed was ambiguous on its face as to the intent of the parties because Franklin's name appeared on the face of the deed, the trial court found that there was clear and convincing evidence that the deed did not express the parties' mutual agreement and therefore used its equitable powers to reform the deed to reflect what it found was the intent of the parties at the time of the deed's signing, making Franklin a joint tenant with right of survivorship.

II. Standard of Review
This case was a bench trial. Therefore, although we will review issues of law de novo, "[t]he trial court's findings of fact will not be disturbed unless they are clearly erroneous, and the evidence will be viewed in the light most favorable to the prevailing party." Hinton v. Sealander Brokerage Co., 917 A.2d 95, 101 (D.C.2007) (internal citations omitted); D.C.Code § 17-305(a) (2001). We have interpreted this statute to be "indistinguishable from the `clearly erroneous' standard" under Super. Ct. Civ. R 52(a). Vereen v. Clayborne, 623 A.2d 1190, 1192 (D.C.1993); United States v. Felder, 548 A.2d 57, 61 n. 4; Auxier v. Kraisel, 466 A.2d 416, 418 (D.C.1983).

III. Deed Reformation
Reformation is available where there is an error in reducing the agreement of the parties to a writing. Isaac v. First Nat'l Bank of Md., D.C., 647 A.2d 1159, 1163 n. 10 (D.C.1994). "Reformation is ... designed to remedy a mistake as to expression, where there is a scrivener's error in the writing or a mistake as to the legal effect of the language." Id. (citing E. ALLAN FARNSWORTH, 2 FARNSWORTH ON CONTRACTS § 7.5, at 219 (1990)). Thus, "where an agreement has been reached by the *587 parties but the writing does not accurately express [their] mutual agreement ... reformation is appropriate." Lumpkins v. CSL Locksmith, LLC, 911 A.2d 418, 423-24 (D.C.2006) (quoting Isaac, supra, at 1162 n. 9). "[T]he parol evidence rule does not forbid inquiry into the object of the parties in executing and receiving a written instrument." Compton v. Atwell, 207 F.2d 139, 140 (D.C.Cir.1953); Smart, supra, 298 A.2d at 219 (citing Compton, 207 F.2d 139). The principle that parol evidence may be used to show "what the transaction was" applies to both instruments purporting to transfer personal property and to instruments purporting to transfer real property, such as a deed. Compton, 207 F.2d at 140 (citing Brick v. Brick, 98 U.S. 514, 516, 25 L.Ed. 256 (1878)). "[A] reformation action may be brought to correct the name or identification of one of the parties to the conveyance. The result of such a change may be to add or remove a person from the conveyance." 14 POWELL ON REAL PROPERTY § 81A.07[3][c] (2000). Moreover, "the fact that the person seeking reformation did not read the document to ascertain the error, or that the person had constructive notice of the defect, does not deny that person the right to reformation." Id. at § 81A.07 [3][e]. Indeed, "[i]f the rule were to the contrary, it is difficult to imagine any case where the remedy would ever be available." Id. Accordingly, proof of fraud or duress are not required in this context. See Hertz v. Klavan, 374 A.2d 871, 873 (D.C.1977). Nonetheless, there is a "presumption that a deed is what it purports to be on its face, and one who seeks to establish the contrary has the burden of doing so by clear and convincing evidence." Smart v. Nevins, 298 A.2d 217, 219 (D.C.1972).
Here, the trial court found that there was clear and convincing evidence that the deed did not express the parties' mutual agreement and therefore reformed the deed to reflect what it found was the intent of the parties at the time of the deed's signing. The trial court's order, however, appears to have concluded, essentially, that the appearance of Franklin's name on the deed's cover sheet and mailing label created ambiguity as to whether the decedent intended to have Franklin's name on the deed as co-grantee and that therefore reformation was proper; but ambiguity[1] does not add up to clear and convincing evidence. Indeed, although the trial court found that Franklin's name appeared on the deed itself, at best one can only say that his name appeared in two out of the three places where a grantee's name would normally appear in a real estate transaction. Moreover, while it is possible to infer that Franklin's name appeared in those two places because the decedent mentioned Franklin to the VA, it is impossible to infer from that evidence alone that, by clear and convincing evidence, the decedent and the VA mistakenly left Franklin's name off the actual deed.
Equally important, the same day the deed was executed, the decedent executed a deed of trust to the grantor (the VA), which itself contained only her name as the purchaser of the property. While Franklin correctly points out that the VA was not then required by law to assure that all persons with an ownership in property authorize the execution of a deed of trust even if some of the owners will not be financially responsible for the debt, see *588 D.C.Code § 42-801 (2001), the fact that she took out the loan by herself, combined with the testimony that she had intended to purchase the property with Franklin because she could not finance the property on her own but later acquired financing without Franklin and went to the closing by herself, counsels against a finding by clear and convincing evidence that the decedent and the VA had meant to include Franklin as a co-purchaser that day.[2]
Thus, although the trial court's factual determinations were generally not without basis in the record,[3] the trial court erred as a matter of law in holding that those findings amounted to clear and convincing evidence that the deed did not express the parties' mutual agreement.
For the foregoing reasons, the lower court's decision is
Reversed.[4]
NOTES
[1] We note that facial ambiguity is not a requirement for reformation, which merely "remed[ies] a mistake as to expression," Isaac, supra, 647 A.2d at 1163 n. 10, where "the writing does not accurately express [the parties'] mutual agreement." Lumpkins, supra, 911 A.2d at 423.
[2] We measure the parties' intent for reformation purposes as of the time the deed was made. See Isaac, supra, 647 A.2d at 1163 n. 10 (noting that where reformation is proper, the deed should be reformed to reflect the "earlier true, but incorrectly or imperfectly stated agreement"); 14 POWELL, supra, § 81A.07 [3][a] ("The words used in the reformed version of the deed are thus different from those which were used in the original deed. The reformed deed corrects the language used so that it reads as it should have read all along. Reformation relates back to, and takes effect from, the date of the conveyance.").
[3] The exception is the trial court's clearly erroneous finding that Franklin's name appeared on the deed itself.
[4] Appellant also argues that the trial court committed reversible error in considering the validity of the decedent's marriage to appellant. Although the trial court heard much evidence regarding the validity of the marriage, whether the marriage was valid has no impact on the ultimate disposition of this case because the deed was drafted almost ten years before the decedent and the appellant even met, much less were married, and because we measure the parties' intent for reformation purposes as of the time the deed was made. See note 2, supra. Moreover, appellee concedes in his brief that he did not assert a claim of invalidity of the marriage. Thus, we need not consider this issue.